UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------- x

JOHNNY HINCAPIE,

                                          Plaintiff,

- against -

CITY OF NEW YORK; Detective CARLOS GONZALEZ;
Detective DONALD CASEY; Detective JAMES CHRISTIE;
Detective ARTHUR SWENSON; Detective JOSE RAMON
ROSARIO; Detective DANIEL RIZZO; Detective MATTHEW
SANTORO; Sergeant SHARIF ALI; Sergeant JOHN HERBST;
Sergeant TIMOTHY CONNOLLY; Sergeant GARY BORMAN;
The Estate of Deputy Chief JOSEPH DEMARTINO; Lieutenant
VICTOR MOLE; Captain "JOHN" BAYSHIM; JOHN and JANE
DOE DETECTIVES 1 through 5; and JOHN and JANE DOE
SUPERVISORS 1-5,

                                          Defendants.

**DOCKET NO.:**

18 Civ. 3432 (PAC)

------------------------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

*Zachary W. Carter*
Corporation Counsel for the City of New York
*Attorney for Defendants City, Gonzalez,*
*Casey, Christie, Borman, Connolly,*
*Rosario, Rizzo, and Santoro*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:*
*Raju Sundaran*
*W. KeAupuni Akina*
*Tel:  (212) 356-2327/2377*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS .............................................................................. 1

STANDARD OF REVIEW ............................................................................. 3

ARGUMENT .................................................................................................. 4

     POINT I ...................................................................................................... 4

        PLAINTIFF'S MALICIOUS PROSECUTION
        CLAIM FAILS AS A MATTER OF LAW ........................................... 4

          a.   Plaintiff Cannot Rebut the Presumption of
          Probable Cause Created by the Grand Jury
          Indictment ............................................................................... 5

          b.   Plaintiff Cannot Demonstrate a Favorable
          Termination Under State Law ................................................... 6

          c.   Plaintiff Cannot Demonstrate a Favorable
          Termination Under Federal Law ............................................... 8

          d.   Plaintiff Fails to Allege the Personal
          Involvement of Defendants Borman, Swenson,
          Rosario, Rizzo, Santoro, and Connelly ................................... 9

     POINT II .................................................................................................... 9

        PLAINTIFF'S FABRICATION OF EVIDENCE
        CLAIM FAILS AS A MATTER OF LAW ........................................... 9

          a.   Plaintiff's Fabrication of Evidence Claim is
          Time Barred ............................................................................. 9

          b.   Even if *Heck v. Humphrey* Tolled the Statute of
          Limitations, Plaintiff's Claim is Still Time Barred .................. 10

          c.   In the Alternative, Plaintiff Fails to State a
          Claim for a Brady Violation .................................................... 11

          d.   Plaintiff Fails to Allege the Personal
          Involvement of Defendants Borman, Swenson,
          Rosario, Rizzo, Santoro, and Connelly ................................... 12

**Page**

POINT III ..................................................................................................... 13

    **PLAINTIFF'S COERCION CLAIM FAILS AS
    A MATTER OF LAW** ............................................................... 13

POINT IV ...................................................................................................... 13

    **PLAINTIFF'S FALSE ARREST AND FALSE
    IMPRISONMENT CLAIMS FAIL AS A
    MATTER OF LAW** ................................................................... 13

        a.   Plaintiff's § 1983 False Arrest Claim is Barred
        by the Statute of Limitations ................................................... 14

        b.   Plaintiff's State Law False Imprisonment Claim
        is Barred by the Statute of Limitations .................................... 15

        c.   Plaintiff Failed to Comply with Conditions
        Precedent to Suit .................................................................... 15

POINT V ....................................................................................................... 16

    **PLAINTIFF'S CLAIMS FOR IIED AND NIED
    FAIL AS A MATTER OF LAW** ............................................. 16

        a.   Plaintiff's State Law IIED and NIED Claims
        are Barred for Failure to Comply with Conditions
        Precedent ................................................................................ 16

        b.   Plaintiff's State Law IIED and NIED Claims
        are Time Barred ..................................................................... 17

        c.   Plaintiff's IIED and NIED Claims are
        Subsumed by His Other Tort Claims ....................................... 18

POINT VI ...................................................................................................... 19

    **PLAINTIFF FAILS TO STATE A CLAIM FOR
    §1983 SUPERVISORY LIABILITY** ...................................... 19

POINT VII ..................................................................................................... 20

    **PLAINTIF'S FAILURE TO INTERVENE
    CLAIM FAILS AS A MATTER OF LAW** ............................. 20

**Page**

POINT VIII ...................................................................................................................... 21

> **PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY** ................................................................ 21
>
> a.   No Underlying Constitutional Violation ........................................... 23
>
> b.   Plaintiff Fails to Allege an Official Policy or Practice ...................................................................................................... 23
>
> c.   Plaintiff Fails to Allege that a Policy or Custom Caused His Injury ................................................................................. 24

**CONCLUSION** ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Albert v. City of New York,
   No. 17-cv-3957 (ARR) (SMG), 2018 U.S. Dist. LEXIS 179576 (E.D.N.Y.
   Oct. 18, 2018) ....................................................................................................................24

Albright v. Oliver,
   510 U.S. 266 (1994)............................................................................................................13

Anilao v. Spota,
   774 F. Supp. 2d 457 (E.D.N.Y. 2011) .................................................................................6

Anthony v. City of New York,
   339 F.3d 129 (2d Cir. 2003)...............................................................................................23

Arum v. Miller,
   273 F. Supp. 2d 229 (E.D.N.Y. 2003) .................................................................................6

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...............................................................................................4, 21, 22

Bd. of the Cnty. Comm'rs v. Brown,
   520 U.S. 397 (1997)............................................................................................................24

Bell Atlantic v. Twombly,
   550 U.S. 544 (2007)...................................................................................................3, 4, 20

Bernard v. United States,
   25 F.3d 98 (2d Cir. 1994)....................................................................................................19

Bond v. City of New York,
   No. 14-CV-2431 (RRM)(VVP), 2015 U.S. Dist. LEXIS 130922 (E.D.N.Y.
   Sept. 28, 2015) .....................................................................................................................5

Boose v. City of Rochester,
   421 N.Y.S.2d 740 (4th Dep't 1979).....................................................................................19

Boyd v. City of New York,
   336 F.3d 72 (2d Cir. 2003)..................................................................................................13

Brogdon v. City of New Rochelle,
   200 F. Supp. 2d 411 (S.D.N.Y. 2002).................................................................................16

**Cases**                                                                    **Pages**

Brooks v. County of Nassau,
    54 F. Supp. 3d 254 (E.D.N.Y. 2014) ..................................................................16

Cantalino v. Danner,
    96 N.Y.2d 391 (2001) ...................................................................................6

City of Canton v. Harris,
    489 U.S. 378 (1989)......................................................................................24

City of Los Angeles v. Heller,
    475 U.S. 796 (1986)......................................................................................23

Colon v. City of N.Y.,
    60 N.Y.2d 78 (1983) ....................................................................................20

Connick v. Thompson,
    131 S. Ct. 1350 (2011)..................................................................................22

Cuevas v. City of New York,
    No. 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7,
    2009) ...........................................................................................................23

D'Olimpio v. Crisafi,
    718 F. Supp. 2d 357 (S.D.N.Y. 2010)..................................................6, 8

Decarlo v. Fry,
    141 F.3d 56 (2d Cir. 1998)............................................................................23

Devito v. Barrant,
    2005 U.S. Dist. LEXIS 22444 (E.D.N.Y. Aug. 23, 2005)......................................19

Fappiano v. City of New York,
    640 Fed. Appx. 115 (2d Cir. 2016)............................................................9, 10, 12

Feinberg v. City of New York,
    No. 99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098 (S.D.N.Y. Aug. 13, 2004) .......................21

Figueroa v. City of New York,
    No. 07 Civ. 11333 (LAP), 2008 U.S. Dist. LEXIS 69273 (S.D.N.Y. Sept. 4,
    2008) ...........................................................................................................14

Fleischman v. Grinker,
    769 F. Supp. 147 (S.D.N.Y. 1991) ............................................................14

**Cases**                                                                      **Pages**

Franks v. Wittick,
    No. 15-cv-6178 (RRM) (JO), 2018 U.S. Dist. LEXIS 170196 (E.D.N.Y. Sep.
    28, 2018) ..................................................................................................................10

Garcia v. Cty. of Westchester,
    No. 11 Civ. 7258 (KMK), 2017 U.S. Dist. LEXIS 191980 (S.D.N.Y. Nov. 20,
    2017) .......................................................................................................................18

Gordon v. City of New York Police Dep't 84th Precinct,
    No. 10 Civ. 3706 (CBA) (LB), 2012 U.S. Dist. LEXIS 44154 (E.D.N.Y. Mar.
    29, 2012) ................................................................................................................23

Hadid v. City of N.Y.,
    730 F. App'x 68 (2d Cir. 2018) ..............................................................................5

Hardy v. New York City Health & Hosps. Corp.,
    164 F.3d 789 (2d Cir. 1999)...................................................................................16

Hayes v. Perotta,
    751 F. Supp. 2d 597 (S.D.N.Y. Sept. 30, 2010) ...................................................22

Heck v. Humphrey,
    512 U.S. 477 (1994)....................................................................................10, 11, 14

Houck v. US Bank NA,
    No. 15 Civ. 10042 (AJN), 2016 U.S. Dist. LEXIS 136033 (S.D.N.Y. Sept. 30,
    2016) .....................................................................................................................1, 2

Hygh v. Jacobs,
    961 F.2d 359 (2d Cir. 1992)....................................................................................7

Jean-Laurent v. Wilkinson,
    540 F. Supp. 2d 501 (S.D.N.Y. 2008)...................................................................21

Jeffes v. Barnes,
    208 F.3d 49 (2d Cir. 2000).....................................................................................24

Krzesaj v. Henry,
    No. 16 Civ. 2926 (ER), 2017 U.S. Dist. LEXIS 37543 (S.D.N.Y. Mar. 15,
    2017) ........................................................................................................................3

Lanning v. City of Glen Falls,
    908 F.3d 19 (2d Cir. 2018)......................................................................................8

**Cases**                                                                                    **Pages**

Lynch v. City of New York,
   No. 16 Civ. 7355 (LAP), 2018 U.S. Dist. LEXIS 52301 (S.D.N.Y. Mar. 27,
   2018) .................................................................................................................24

Lynch v. Suffolk County Police Dep't, Inc.,
   348 Fed. Appx. 672 (2d Cir. 2009)..................................................................15

McCray v. City of New York,
   2007 U.S. Dist. LEXIS 90875 (S.D.N.Y. Dec. 11, 2007) ......................................17

McDonough v. Smith,
   898 F.3d 259 (2d Cir. 2018)..............................................................................10

Mercano v. City of New York,
   2017 U.S. Dist. LEXIS 73000 (S.D.N.Y. May 12, 2017)......................................17

Missel v. County of Monroe,
   351 Fed. Appx. 543 (2d Cir. 2009)..................................................................23

Mitchell v. City of New York,
   841 F.3d 72 (2d Cir. 2016)...............................................................................4, 5

Mitchell v. Victoria Home,
   377 F. Supp. 2d 361 (S.D.N.Y. 2005)................................................................15

Monell v. Dep't of Soc. Serv.,
   436 U.S. 658 (1978)...........................................................................22, 23, 24, 25

Moore v. City of N.Y.,
   219 F. Supp. 2d 335 (E.D.N.Y. 2002) ..............................................................18

Murphy v. Lynn,
   118 F.3d 938 (2d Cir. 1997).................................................................................6

O'Neill v. Krzeminski,
   839 F.2d 9 (2d Cir. 1988)...................................................................................21

Oklahoma v. Tuttle,
   471 U.S. 808 (1985).............................................................................................22

Patterson v. Cnty. of Oneida, N.Y.,
   375 F.3d 206 (2d Cir. 2004)..............................................................................14

Piranzo v. N.Y. City Health & Hosps. Corp.,
   300 A.D.2d 548 (2d Dept. 2002) ......................................................................18

**Cases**                                                                    **Pages**

Pugh v. City of New York,
    No. 01-CV-0129 (ILG), 2002 U.S. Dist. LEXIS 2976 (E.D.N.Y. Jan. 9, 2002) ....................14

Quiles v. City of New York,
    No. 01 Civ. 10934 (LTS), 2003 U.S. Dist. LEXIS 14238 (S.D.N.Y. Aug. 13,
    2003) ...............................................................................................................................15

Romero v. City of New York,
    839 F. Supp. 2d 588 (E.D.N.Y. 2012) ...................................................................18

Ruiz v. Herrera,
    745 F. Supp. 940 (S.D.N.Y. 1990) ........................................................................16

S.W. v. City of New York,
    46 F. Supp. 3d 176 (E.D.N.Y. 2014) .....................................................................17

Saucier v. Katz,
    533 U.S. 194 (2001)...............................................................................................21

Savino v. City of N.Y.,
    331 F.3d 63 (2d Cir. 2003).................................................................................5, 6

Simmons v. New York City Police Dep't,
    97 F. App'x 341 (2d Cir. 2004) ...............................................................................5

Singer v. Fulton County Sheriff,
    63 F.3d 110 (2d Cir. 1995).....................................................................................13

Stamile v. County of Nassau,
    2014 U.S. Dist. LEXIS 39320 (E.D.N.Y. Mar. 25, 2014) .....................................19

Syms v. Olin Corp.,
    408 F.3d 95 (2d Cir. 2005)...............................................................................17, 18

Van Cortlandt v. Westchester County,
    No. 07 Civ. 1783 (MDF), 2007 U.S. Dist. LEXIS 80977 (S.D.N.Y. Oct. 31,
    2007) ...............................................................................................................16

Vincent v. Winski,
    No. 14 Civ. 7744 (VSB), 2018 U.S. Dist. LEXIS 47537 (S.D.N.Y. Mar. 22,
    2018) .................................................................................................................2

Vippolis v. Village of Haverstraw,
    768 F.2d 40 (2d Cir. 1985), cert. denied, 480 U.S. 916 (1987) ...............................22

**<u>Cases</u>**                                                                      **<u>Pages</u>**

<u>Wallace v. Kato</u>,
    549 U.S. 384 (2007)..........................................................................................10, 11

<u>Ying Li v. City of New York</u>,
    246 F. Supp.3d 578 (E.D.N.Y. 2017) ...................................................................14

<u>Zahra v. Town of Southold</u>,
    48 F.3d 674 (2d Cir. 1995).....................................................................................22

<u>Zahrey v. City of New York</u>,
    No. 98 Civ. 4546 (DCP), 2009 U.S. Dist. LEXIS 31893 (S.D.N.Y. Apr. 14,
    2009) .....................................................................................................................13

**Statutes**

U.S. Const. Amend. IV ...............................................................................................5

U.S. Const. Amend. V ...............................................................................................13

U.S. Const. Amend. VI .............................................................................................13

U.S. Const. Amend. XIV ..........................................................................................13

42 U.S.C. § 1983 ............................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)...............................................................................................3

N.Y. Gen. Mun. L. § 50 ......................................................................................16, 17

N.Y. CPL § 440.10 .................................................................................................2, 7

## PRELIMINARY STATEMENT

Plaintiff Johnny Hincapie ("plaintiff") brings this action pursuant to 42 U.S.C. § 1983 and New York State law against The City of New York and several individual defendants ("defendants"). Specifically, plaintiff alleges that, on or about September 3, 1990, he was forced to confess to a crime he did not commit, resulting in a prison sentence of approximately 25 years. However, plaintiff's causes of action fail for several substantive and procedural reasons including the expiration of the statute of limitations and failure to state a claim. For the reasons outlined below, his First Amended Complaint ("FAC") should be dismissed in its entirety.

## STATEMENT OF FACTS

On the evening of September 2, 1990, Utah native Brian Watkins, 22, was with his family on vacation in New York City. (FAC annexed to the declaration of W. KeAupuni Akina dated May 17, 2019 ("Akina Decl.") as Exhibit A at ¶ 38). While waiting for the subway at the 7th Avenue and 53rd Street subway station in Manhattan, Brian's family was surrounded by a group of teenagers armed with knives who demanded money. (Id. ¶ 39). Brian Watkins was stabbed to death by one of the teenagers while trying to protect his family. (Id. ¶ 40).

Within the next 24 hours, eight young men, including plaintiff, were arrested for participating in the crime. (Id. ¶¶ 52, 59, 74, 84). On September 3, 1990, plaintiff signed a written statement for the police and gave a videotaped statement to ADA Donna Henken of the New York County District Attorney's Office ("DANY"). (Id. ¶¶ 97, 101). In both statements, plaintiff described his participation in the crime that resulted in the death of Brian Watkins. (Id.). At his criminal trial, "[t]he chief evidence against Johnny Hincapie were his own confessions." (NY CPL § 440.10 Decision ("440 Decision") annexed to the Akina Decl. as Exhibit B at 5).[1]

---

[1] This Court may consider the 440 Decision as it was incorporated by reference in plaintiff's FAC at ¶¶ 119-120. The Court may also take judicial notice of the 440 Decision. See Houck v.

Plaintiff's counsel argued to the criminal jury that he was "manipulated by police detectives into making a false confession" but failed to present "evidence of physical abuse or coercion." (Id.). On December 10, 1991, a jury convicted plaintiff of, *inter alia*, Second Degree Murder, and he was eventually sentenced to 25 years to life in prison. (Id. at 1; Criminal Trial Transcript ("Crim. Trial Tr.") annexed to the Akina Decl. as Exhibit C at 3567:7-3568:11).[2]

In 2013, following several unsuccessful appeals, plaintiff filed a motion pursuant to NY CPL § 440.10 seeking to set aside his conviction on the following grounds: (1) that a new trial was warranted based on newly discovered evidence; and (2) that he was actually innocent. (See 440 Decision, Akina Decl., Ex. B at 6-7, 9). On October 6, 2015, plaintiff's § 440 motion was granted in part as to newly discovered evidence, his conviction was vacated, and a new trial was ordered. (Id. at 42). However, the court denied plaintiff's motion for actual innocence, holding that plaintiff had not "established that he [was] actually innocent by clear and convincing evidence." (Id. at 33). Plaintiff was released from custody on October 6, 2015. (See FAC, Akina Decl., Ex. A ¶ 219).

On January 24, 2017, DANY filed a recommendation of dismissal ("ROD") of plaintiff's criminal case. (See ROD annexed to the Akina Decl. as Exhibit D).[3] In the ROD, DANY recommended dismissal of plaintiff's indictment, giving reasons such as the passage of time and the unavailability of witnesses. (See id. at 3-4). Importantly, DANY emphasized its continued

---

US Bank NA, No. 15 Civ. 10042 (AJN), 2016 U.S. Dist. LEXIS 136033, at *11 (S.D.N.Y. Sept. 30, 2016) ("courts are permitted to take judicial notice of state court documents, even on a motion to dismiss").

[2] This Court may consider the criminal trial transcript. See Vincent v. Winski, No. 14 Civ. 7744 (VSB), 2018 U.S. Dist. LEXIS 47537, at *19 (S.D.N.Y. Mar. 22, 2018) (taking judicial notice of state court transcript in connection with motion to dismiss).

[3] This Court may consider the ROD as it was referenced at the 1/25/17 court appearance and because it is a document filed in state court. See Houck, 2016 U.S. Dist. LEXIS 136033, at *11.

belief in plaintiff's guilt, stating that DANY continues "to believe that Hincapie's confessions were both voluntary and truthful, that his claims to the contrary are false, and that he was a participant in the felony murder of Brian Watkins. . ." (Id. at 5).

The next day, on January 25, 2017, plaintiff was present for a court proceeding in New York County Supreme Court. (See 1/25/17 Hearing Tr. annexed to the Akina Decl. as Exhibit E). ADA Eugene Hurley recommended that plaintiff's indictment be dismissed, but was clear that DANY "continue[s] to believe, based upon the totality of the evidence that Mr. Hincapie's oral, written and videotaped confession were both voluntary and truthful and that he participated in the robbery of Sherwin Watkins and the felony murder of Brian Watkins. . ." (Id. at 2:17-22). The court granted DANY's motion, dismissing the indictment. (See id. at 7:4-6; FAC, Akina Decl., Ex. A ¶ 192).

Plaintiff filed a Notice of Claim with the City of New York on March 21, 2017. (Notice of Claim annexed to the Akina Decl. as Exhibit F).[4] He then commenced this action by filing a Complaint on April 19, 2018. (Dkt. No. 1). On April 12, 2019, defendants filed a motion to dismiss. (Dkt. No. 91). On May 3, 2019, plaintiff filed his FAC. (FAC, Akina Decl., Ex. A). Defendants now move to dismiss the claims in plaintiff's FAC.

## STANDARD OF REVIEW

Defendants move to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). While for the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Bell

---

[4] This Court may consider plaintiff's Notice of Claim as it is incorporated by reference in plaintiff's FAC at ¶ 8 and because the Court may take judicial notice of it. See Krzesaj v. Henry, No. 16 Civ. 2926 (ER), 2017 U.S. Dist. LEXIS 37543, at *35 (S.D.N.Y. Mar. 15, 2017).

Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Further, to survive a motion to dismiss, a pleading must be supported by allegations that are not merely conclusory, but put forth underlying facts so as to make a claim plausible on its face. Twombly, 550 U.S. 544 at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Factual allegations contained in a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . ." Twombly, 550 U.S. at 555. Legal conclusions disguised as facts, however, are not entitled to the assumption of truth. Id.

Importantly, the factual allegations in a complaint must show the grounds on which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.  The mere filing of a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions . . ." Iqbal, 556 U.S. at 678-79.

## ARGUMENT

### POINT I

### PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW

Plaintiff brings both state and federal causes of action for malicious prosecution. However, both claims fail as a matter of law.  "[U]nder both Section 1983 and New York State law, a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016) (citations and quotation marks

omitted). Section 1983 additionally requires "a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." Id. at 79 (citation and quotation marks omitted). Here, plaintiff's malicious prosecution claim fails because: (1) plaintiff cannot rebut the presumption of probable cause created by the indictment; (2) plaintiff cannot demonstrate a favorable termination; and (3) plaintiff cannot establish initiation and personal involvement of certain defendants.

### a. Plaintiff Cannot Rebut the Presumption of Probable Cause Created by the Grand Jury Indictment

For purposes of a malicious prosecution claim under state and federal law, a grand jury indictment creates a presumption of probable cause. Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003). The presumption "may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Id. (emphasis in original) (quoting Colon v. City of N.Y., 60 N.Y.2d 78, 83 (1983)). The burden of rebutting that presumption lies with the plaintiff. Id. at 73. However, a malicious prosecution claim may be "dismiss[ed] . . . at the pleading stage where the plaintiff has failed to allege facts sufficient to rebut the presumption of probable cause flowing from a grand jury indictment." Hadid v. City of N.Y., 730 F. App'x 68, 71 n.1 (2d Cir. 2018) (collecting cases).

A plaintiff cannot meet his burden by simply offering "mere conjecture and surmise that [an] indictment was procured as a result of conduct undertaken by the defendants in bad faith." Savino, 331 F.3d at 73 (citation and quotation marks omitted); see also Simmons v. New York City Police Dep't, 97 F. App'x 341, 342 (2d Cir. 2004) ("although [plaintiff] testified that the arresting officer…told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct"); Bond v. City of New York, No. 14-

CV-2431 (RRM)(VVP), 2015 U.S. Dist. LEXIS 130922, at *16 (E.D.N.Y. Sept. 28, 2015) (holding that plaintiff's own version of events, without more, was insufficient to rebut the presumption of probable cause). In <u>Savino</u>, the Second Circuit held that the "District Court's analysis [was] flawed because it apparently ignored the rule that it is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." <u>Savino</u>, 331 F.3d at 73.

Here, like in <u>Savino</u>, plaintiff offers nothing more than his own version of events to rebut the presumption of probable cause, claiming that his confession was coerced. But a mere allegation, without more, is insufficient to meet *plaintiff's burden*. Without more to corroborate his claim, his allegations are mere conjecture of the kind deemed to be insufficient to rebut the presumption of probable cause created by an indictment. Therefore, plaintiff's malicious prosecution claims fail as a matter of law.

### b.  Plaintiff Cannot Demonstrate a Favorable Termination Under State Law

Plaintiff's state law malicious prosecution claim fails because dismissal of his criminal matter did not constitute a favorable termination. Under New York State law, a favorable termination requires that "the circumstances surrounding the termination are not inconsistent with the innocence of the accused." <u>Cantalino v. Danner</u>, 96 N.Y.2d 391, 395 (2001). "[T]he New York Court of Appeals has clarified that there is no per se rule that a dismissal in the interest of justice can never constitute a favorable termination." <u>D'Olimpio v. Crisafi</u>, 718 F. Supp. 2d 357, 368 (S.D.N.Y. 2010) (citing <u>Cantalino</u>, 96 N.Y.2d at 396). A dismissal of a case out of mercy is not a favorable termination, as "mercy presupposes the guilt of the accused." <u>Arum v. Miller</u>, 273 F. Supp. 2d 229, 234 (E.D.N.Y. 2003); <u>see also</u> <u>Murphy v. Lynn</u>, 118 F.3d 938, 949 (2d Cir. 1997); <u>Anilao v. Spota</u>, 774 F. Supp. 2d 457, 508 (E.D.N.Y. 2011) ("charges

dismissed or withdrawn out of mercy requested or accepted by the accused" do not constitute a favorable termination under state law). Moreover, where a dismissal in the interest of justice leaves "the question of guilt or innocence unanswered[,] . . . as a matter of law, it cannot provide the favorable termination required as the basis for [that] claim." Hygh v. Jacobs, 961 F.2d 359, 367-68 (2d Cir. 1992) (internal quotations and citations omitted).

Here, there is no doubt that the termination of plaintiff's criminal case was an "interest of justice" dismissal. On the dismissal date, the Court asked the DANY how they wished to proceed, and ADA Hurley responded:

> As the recommendation makes clear, while **we continue to believe, based upon the totality of the evidence that Mr. Hincapie's oral, written and videotaped confession were both voluntary and truthful and that he participated in the robbery of Sherwin Watkins and the felony murder of Brian Watkins**….it is unlikely at this time that we can convince a jury of Mr. Hincapie's guilt beyond a reasonable doubt. Given this assessment, and in light of the fact that Mr. Hincapie has served 25 years in prison for these crimes, we do not believe that a retrial is an appropriate allocation of prosecutorial resources or **in the interest of justice**.

(See 1/25/17 Hearing Tr., Akina Decl., Ex. E at 2:12-3:4 (emphasis added)). The corresponding ROD, which was filed with the criminal court the day before the hearing, explained in further detail DANY's continued belief in plaintiff's guilt, but that for evidentiary reasons, mercy, and in the interest of justice, it recommended dismissal of the charges. (See ROD, Akina Decl., Ex. D). The criminal court ultimately granted DANY's request for dismissal. (See 1/25/17 Hearing Tr., Akina Decl., Ex. E at 7:4-6).

In vacating plaintiff's conviction under NY CPL § 440.10, the court explicitly denied plaintiff's motion seeking a finding of actual innocence, stating that "the defendant has not established that he is actually innocent by clear and convincing evidence." (See 440 Decision, Akina Decl., Ex. B at 33). Thus, according to both the court that overturned plaintiff's conviction

and the court that dismissed his criminal charges, plaintiff's innocence was explicitly refuted. The underlying court record clearly indicates that the dismissal of plaintiff's indictment was inconsistent with his innocence, done out of mercy, and in the interests of justice. See Crisafi, 718 F. Supp. 2d at 367. Thus, plaintiff's state law malicious prosecution claim must be dismissed as a matter of law for lack of a favorable termination.

### c.  Plaintiff Cannot Demonstrate a Favorable Termination Under Federal Law

The Second Circuit recently held that, "a plaintiff asserting a malicious prosecution claim under § 1983 must still show that the underlying criminal matter ended in a manner that affirmatively indicates his innocence." Lanning v. City of Glen Falls, 908 F.3d 19, 22 (2d Cir. 2018). A § 1983 malicious prosecution termination must be "indicative of plaintiff's innocence" as opposed to the state law standard of "not inconsistent with the Plaintiff's innocence." Id. at 24-25 ("we write to dispel any confusion among district courts about the favorable termination element of a § 1983 malicious prosecution claim").

Here, plaintiff cannot establish a favorable termination under Lanning. As stated above, DANY adamantly expressed its continued belief in plaintiff's guilt when recommending dismissal, citing factors such as the interest of justice, time already served, and unavailability of witnesses to support its recommendation. (See ROD, Akina Decl., Ex. D; see also 1/25/17 Hearing Tr., Akina Decl., Ex. E). Further, DANY unequivocally maintained its belief that plaintiff's inculpatory statements were "voluntary and truthful." (Id.). The record is clear—the prosecution remained steadfast in its belief of plaintiff guilt. (Id.).[5]

---

[5] Of note, at no point did the prosecution cite to a lack of probable cause or proof of actual innocence as factors in its decision to move for dismissal. (Id.)

The § 440 court also denied plaintiff's motion for exoneration based on actual innocence. (See 440 Decision, Akina Decl., Ex. B at 32-33). Instead, the court *could not* conclude that "no reasonable juror hearing the same evidence could convict the defendant at trial." (Id. at 33).

Therefore, plaintiff's federal cause of action for malicious prosecution fails.

### d. Plaintiff Fails to Allege the Personal Involvement of Defendants Borman, Swenson, Rosario, Rizzo, Santoro, and Connelly

Plaintiff fails to sufficiently plead that defendants Borman, Swenson, Rosario, Rizzo, Santoro, or Connelly initiated the criminal prosecution against plaintiff. As to defendants Borman and Rosario, plaintiff merely alleges that they questioned criminal co-defendant Nova. (FAC, Akina Decl., Ex. A ¶ 68). As to defendant Swenson, plaintiff alleges that he questioned criminal co-defendant Nova (id. ¶ 71), prepared a police report regarding statements by co-defendant Lopez (id. ¶ 81), and questioned another suspect Keith Aldridge (id. ¶ 92). As to defendants Rizzo and Santoro, plaintiff alleges they obtained a statement from criminal co-defendant Fernandez that listed plaintiff's name, without further specificity (id. ¶ 77). Even taken as true, these actions fail to establish any of these defendants' personal involvement in initiating or maintaining criminal charges against plaintiff. Therefore, plaintiff's state and federal malicious prosecution claims against defendants Borman, Swenson, Rosario, Rizzo, Santoro, and Connelly must be dismissed.

## POINT II

## PLAINTIFF'S FABRICATION OF EVIDENCE
## CLAIM FAILS AS A MATTER OF LAW

### a. Plaintiff's Fabrication of Evidence Claim is Time Barred

As a preliminary matter, plaintiff's Brady violation is held to the same procedural requirements as a fair trial claim (i.e. fabrication of evidence) as it is a theory of liability within a fair trial claim. See Fappiano v. City of New York, 640 Fed. Appx. 115, 118 (2d Cir. 2016) ("A

fair trial claim may also arise where the police or prosecutors withhold material exculpatory or impeaching evidence from a defendant. The latter theory of liability is essentially a civil claim seeking damages for a *Brady* violation."). The Second Circuit describes "fair trial claims [as] sounding in a *Brady* violation." Id.

A claim for fabrication of evidence is subject to a three year statute of limitations. See McDonough v. Smith, 898 F.3d 259, 265 (2d Cir. 2018) (applying three year statute of limitations to federal fabrication of evidence and malicious prosecution claims). "Because the injury for this constitutional violation occurs at the time the evidence is used against the [criminal] defendant to deprive him of his liberty, whether it be at the time he is arrested, faces trial, or is convicted, it is when he becomes aware of that tainted evidence and its improper use that the harm is complete and the cause of action accrues." McDonough, 898 F.3d at 267. Unlike a malicious prosecution claim, a fair trial / fabrication of evidence claim does not include a favorable termination element. See Franks v. Wittick, No. 15-cv-6178 (RRM) (JO), 2018 U.S. Dist. LEXIS 170196, at *25 (E.D.N.Y. Sep. 28, 2018) (citing McDonough, 898 F.3d at 267).

Here, it is undisputed that plaintiff was aware of the allegedly fabricated evidence—his own coerced confessions—at the time the coercion allegedly occurred on September 3, 1990. (FAC, Akina Decl., Ex. A ¶¶ 97, 101). Accordingly, the statute of limitations began to run on September 3, 1990 and expired on September 3, 1993. Since plaintiff filed his complaint on April 19, 2018, his fabrication of evidence and *Brady* claims are time barred. (Dkt. No. 1).

### b. Even if Heck v. Humphrey Tolled the Statute of Limitations, Plaintiff's Claim is Still Time Barred

Under Heck v. Humphrey, a § 1983 suit must be dismissed if judgment for the plaintiff would "imply the invalidity of his conviction or sentence." Heck v. Humphrey, 512 U.S. 477, 487 (1994). However, the Supreme Court in Wallace v. Kato refused to adopt a federal tolling

rule for a scenario wherein "an anticipated future conviction" might be impugned by a possible § 1983 lawsuit. See Wallace v. Kato, 549 U.S. 384, 393-95 (2007) ("We are not disposed to embrace this bizarre extension of *Heck*"). Thus, it is unclear whether Heck would toll the statute of limitations for the period during which plaintiff's conviction was in effect and not overturned.

Even assuming arguendo that plaintiff is entitled to tolling of the statute of limitations under Heck, his claim is still time barred. 463 days (approximately 1 year and 3 months) elapsed from the date of the alleged coerced confessions on September 3, 1990 to plaintiff's conviction on December 10, 1991. After plaintiff's conviction was overturned on December 6, 2015, he had 632 days (approximately 1 year and 9 months) remaining to file his complaint by June 29, 2017. However, he untimely filed his complaint over 9 months later on April 19, 2018.

The significant dates relating to the accrual of plaintiff's fair trial claim are as follows:

- **September 3, 1990** (plaintiff's fair trial claim accrues): Plaintiff is arrested after giving a written and videotaped statement (see FAC, Akina Decl., Ex. A ¶¶ 74, 84, 98, 102);
- **December 10, 1991**: Plaintiff is convicted—the statute of limitations had run for 463 days (September 3, 1990 to December 10, 1991) (Crim. Trial Tr., Akina Decl., Ex. C at 3567:7-3568:11);
- **September 3, 1993**: the deadline for plaintiff to file his fair trial claim without tolling under Heck;
- **October 6, 2015**: Plaintiff's conviction is vacated, and a new trial is ordered, leaving plaintiff with 632 days to timely file his fair trial claim (see 440 Decision, Akina Decl., Ex. B at 42);
- **June 29, 2017**: Accounting for tolling under Heck, the deadline by which plaintiff would have needed to timely file his fair trial claim;
- **April 19, 2018**: The date plaintiff filed his complaint. (Dkt. No. 1).

Therefore, plaintiff's fabrication of evidence claim must be dismissed as a matter of law.

### c. In the Alternative, Plaintiff Fails to State a Claim for a Brady Violation

To the extent the Court construes plaintiff's Brady violation claim as a separate claim from plaintiff's fabrication of evidence claim, plaintiff fails to state a cause of action. "A classic *Brady* violation contains three elements: 'The evidence at issue must be favorable to the accused,

either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" Fappiano, 640 Fed. Appx. at 118 (quoting United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004)). A plaintiff must demonstrate an intentional suppression of exculpatory evidence. Id. (citing Poventud v. City of New York, 750 F.3d 121, 138 (2d Cir. 2014)).

Here, plaintiff alleges that unspecified defendants "failed to adequately disclose exculpatory witness information" as to a Tannisha Vasquez and Ricardo Lopez. (FAC, Akina Decl., Ex. A ¶ 197). First, plaintiff fails to specify which of the many named defendants suppressed this information. Second, plaintiff does not specify the nature of Ms. Vasquez's materiality to plaintiff's criminal defense or any resulting prejudice from any alleged suppression as she is only mentioned once in the FAC. (Id.). Third, the FAC clearly states that "[t]he trial court excluded the credible exculpatory statements made by Ricardo Lopez on legally dubious hearsay grounds." (Id. ¶ 112). It is clear that Ricardo Lopez's existence and statements were adequately disclosed and even examined by the criminal trial court, notwithstanding plaintiff's disagreement with the trial court's evidentiary rulings. Plaintiff has failed to sufficiently allege a Brady violation by any individual or the nature of the violation beyond conclusory allegations. Therefore, plaintiff's Brady violation claim must be dismissed as a matter of law.

### d. Plaintiff Fails to Allege the Personal Involvement of Defendants Borman, Swenson, Rosario, Rizzo, Santoro, and Connelly

For the same reasons discussed in Point I.d supra, plaintiff also fails to allege the personal involvement of defendants Borman, Swenson, Rosario, Rizzo, Santoro, and Connelly in his fabrication of evidence or Brady claim. Plaintiff fails to allege sufficient facts indicating that any of these defendants suppressed material evidence or fabricated evidence likely to influence a jury or forwarded it to prosecutors. Therefore, plaintiff's claim must be dismissed.

-12-

## POINT III

## PLAINTIFF'S COERCION CLAIM FAILS AS A MATTER OF LAW

Plaintiff's § 1983 coercion claim should be dismissed because it is subsumed by his denial of the right to a fair trial / fabrication of evidence claim. "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing' such a claim." Albright v. Oliver, 510 U.S. 266, 273 (1994) (citations omitted). Where a more specific Sixth Amendment fair trial claim lies, the more generalized Fifth Amendment substantive due process claim must be dismissed. See Zahrey v. City of New York, No. 98 Civ. 4546 (DCP), 2009 U.S. Dist. LEXIS 31893, at *21 (S.D.N.Y. Apr. 14, 2009). In Zahrey, the court dismissed plaintiff's Fifth and Fourteenth Amendment claims regarding the use of evidence that was "fabricated, or created, through the use of bribery, *coercion*, suggestion or other *improper interrogation techniques*…" in light of plaintiff's fair trial claim. Id., at *26 (emphasis added). Similarly here, plaintiff's coercion claim is better characterized as part of his fair trial claim premised on evidence fabrication. Therefore, plaintiff's coercion claims should be dismissed as duplicative.

## POINT IV

## PLAINTIFF'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS FAIL AS A MATTER OF LAW

The elements of a false arrest claim under § 1983 are substantially the same as the elements of a false arrest claim under New York law. See Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). False arrest and false imprisonment have identical elements. See Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). Here, both of plaintiff's federal and state

law claims are barred by the statute of limitations. Moreover, plaintiff has failed to comply with conditions precedent as to his state law false imprisonment claim.

   a.   **Plaintiff's § 1983 False Arrest Claim is Barred by the Statute of Limitations**

   "The statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004). For a § 1983 false arrest claim, the statute of limitations "accrues at the time that the alleged false arrest ends, i.e., when the arrestee 'becomes held pursuant to [legal] process-when, for example, he is bound over by a magistrate or arraigned on charges.'" Ying Li v. City of New York, 246 F. Supp.3d 578, 601 (E.D.N.Y. 2017) (citing Wallace, 549 U.S. at 389).

   Courts in "[t]he Second Circuit ha[ve] strictly applied statutes of limitations in § 1983 actions." Fleischman v. Grinker, 769 F. Supp. 147, 149 (S.D.N.Y. 1991) (citing Day v. Morgenthau, 909 F.2d 75, 79 (2d Cir. 1990) (barring a § 1983 action brought 3 years and 1 day after accrual)); see also Figueroa v. City of New York, No. 07 Civ. 11333 (LAP), 2008 U.S. Dist. LEXIS 69273, at *4 (S.D.N.Y. Sept. 4, 2008) (dismissing complaint filed at midnight, 1 minute beyond the statute of limitations); Pugh v. City of New York, No. 01-CV-0129 (ILG), 2002 U.S. Dist. LEXIS 2976, at *5-7 (E.D.N.Y. Jan. 9, 2002) (dismissing false arrest and excessive force claims filed 1 day beyond the statute of limitations).

   Here, plaintiff was arrested on September 3, 1990. (See FAC, Akina Decl., Ex. A ¶¶ 74, 84, 219). He was subsequently charged and held later that same day. (Id. ¶ 158). Therefore, the statute of limitations accrued on September 3, 1990, and plaintiff had until September 3, 1993 to file the instant complaint. Even assuming arguendo that plaintiff's December 10, 1991 conviction tolled the statute of limitations in light of Heck, plaintiff's false arrest claim is still untimely. For the same reasons discussed in Point II.b supra, any tolling under Heck would have lifted after plaintiff's conviction was overturned on October 6, 2015. After the limitations period

resumed, plaintiff had to file his false arrest claim by June 29, 2017. However, plaintiff filed his complaint in this lawsuit on April 19, 2018. Moreover, the original complaint did not raise a § 1983 false arrest claim, which was raised for the first time in his FAC filed April 12, 2019. Therefore, plaintiff's § 1983 false arrest claim is time barred.

**b. Plaintiff's State Law False Imprisonment Claim is Barred by the Statute of Limitations**

Plaintiff's state law false imprisonment claim is also barred by the statute of limitations. False imprisonment claims against the City of New York are subject to a one year and ninety day statute of limitations. See Quiles v. City of New York, No. 01 Civ. 10934 (LTS), 2003 U.S. Dist. LEXIS 14238, at *22 (S.D.N.Y. Aug. 13, 2003) (citing NY GML § 50-i). "[T]he tort of false imprisonment accrues not on the date of arraignment but on 'the date of the prisoner's release from confinement.'" Lynch v. Suffolk County Police Dep't, Inc., 348 Fed. Appx. 672, 676 (2d Cir. 2009) (citations omitted); see also Mitchell v. Victoria Home, 377 F. Supp. 2d 361, 377 (S.D.N.Y. 2005) ("in New York, a state claim for false arrest/false imprisonment accrues when a plaintiff is released from pre-arraignment custody").

Here, plaintiff was arrested on September 3, 1990, but remained in custody until his conviction was overturned on October 6, 2015. (See FAC, Akina Decl., Ex. A ¶¶ 125, 219). Therefore, the deadline for plaintiff to file his false imprisonment claim was January 4, 2017— one year and 90 days after his release from custody. However, plaintiff waited until April 19, 2018 to file his initial complaint, nearly 2 and-a-half years after his release from custody. (Dkt. No. 1). Therefore, plaintiff's state law false imprisonment claim is time-barred.

**c. Plaintiff Failed to Comply with Conditions Precedent to Suit**

Plaintiff's state law false imprisonment claim is also barred for failure to comply with conditions precedent to suit under GML § 50. Under New York Law, "[n]o action … shall be

prosecuted or maintained against the city …. or any employee … unless notice of claim shall have been made and served upon the city." N.Y. Gen. Mun. L. § 50-k(6) (Consol. 2001). The notice must be served upon the municipality within 90 days after the claim arose. N.Y. Gen. Mun. L. § 50-e(1)(a) (Consol. 2001). Notice of claim requirements are to be strictly construed. Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789, 793 (2d Cir. 1999) (citation omitted). Failure to comply with the notice of claim requirements requires dismissal of the state law claims. See Brooks v. County of Nassau, 54 F. Supp. 3d 254, 258 (E.D.N.Y. 2014); Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 428 (S.D.N.Y. 2002) (dismissing claims with prejudice for failure to file a notice of claim); Ruiz v. Herrera, 745 F. Supp. 940, 946 (S.D.N.Y. 1990) (dismissing tort claims where plaintiff failed to comply with notice of claim requirements). "Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice." Van Cortlandt v. Westchester County, No. 07 Civ. 1783 (MDF), 2007 U.S. Dist. LEXIS 80977, at *24 (S.D.N.Y. Oct. 31, 2007) (citations omitted).

Here, plaintiff filed his notice of claim on March 21, 2017. (See Notice of Claim, Akina Decl., Ex. F). As discussed in Point IV.b supra, plaintiff's claim accrued on the date of his release on October 6, 2015. Plaintiff then had 90 days to file his notice of claim by January 4, 2016, but failed to do so. Accordingly, plaintiff's state law claim must be dismissed.

## POINT V

## PLAINTIFF'S CLAIMS FOR IIED AND NIED FAIL AS A MATTER OF LAW

### a. Plaintiff's State Law IIED and NIED Claims are Barred for Failure to Comply with Conditions Precedent

Plaintiff's intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") claims must be dismissed for failure to comply with the General

Municipal Law. As discussed in Point IV.c <u>supra</u>, plaintiff was required to file a notice of claim with the City 90 days after his state law claims arose. <u>See</u> N.Y. Gen. Mun. L. § 50-e(1)(a) (Consol. 2001).

Plaintiff's claims for IIED and NIED, predicated on "coercing and fabricating a false confession," (FAC, Akina Decl., Ex. A ¶¶ 220-221) accordingly arose on the date of his allegedly false confessions, September 3, 1990. (<u>Id.</u> ¶¶ 97, 101). Plaintiff had 90 days until December 2, 1990, to file a notice of claim, but failed to do so. Even assuming <u>arguendo</u> that plaintiff's claims for IIED and NIED arose when his conviction was overturned on October 6, 2015, he had 90 days until January 4, 2016 to file. Since plaintiff waited until March 21, 2017 to file a notice of claim, both of his claims for IIED and NIED, must be dismissed.

**b.  Plaintiff's State Law IIED and NIED Claims are Time Barred**

Plaintiff's IIED claim is also time barred. New York's General Municipal Law requires that a claim against New York City or its employees must be "commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. L. § 50-i(1). Under New York law, a claim for IIED accrues at the time of injury. <u>Syms v. Olin Corp.</u>, 408 F.3d 95, 109 (2d Cir. 2005); <u>see</u> <u>McCray v. City of New York</u>, 2007 U.S. Dist. LEXIS 90875 (S.D.N.Y. Dec. 11, 2007) ("a claim for intentional infliction of emotional distress accrues on the date of the 'last actionable act' of the alleged course of conduct). Consequently, plaintiff's claim for IIED accrued on September 3, 1990, the day his confession was allegedly coerced. <u>See</u> <u>Mercano v. City of New York</u>, 2017 U.S. Dist. LEXIS 73000, at *11-12 (S.D.N.Y. May 12, 2017) (holding that the plaintiff's IIED claim accrued on the date of the alleged assault).

Plaintiff's NIED claim is similarly time barred. Under New York law, negligence claims, including claims for NIED, accrue at the time the claim becomes enforceable, which is usually at the time that the plaintiff is injured. <u>S.W. v. City of New York</u>, 46 F. Supp. 3d 176, 190

(E.D.N.Y. 2014); see Syms, 408 F.3d 95 at 109 ("historically, New York's statute of limitations generally began to run at the time of injury").

In order for his NIED or IIED claims to have been timely, plaintiff would have had to file his lawsuit no later than December 2, 1991.[6] Accordingly, plaintiff's claims are time barred and must be dismissed since he did not file his original complaint until April 19, 2018.

### c.   Plaintiff's IIED and NIED Claims are Subsumed by His Other Tort Claims

As to IIED, in New York, "'no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability.'" Moore v. City of N.Y., 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (granting defendants summary judgment and dismissing plaintiff's claim of IIED as being encompassed by plaintiff's claims for assault, battery, and malicious prosecution) (quoting Hansel v. Sheridan, 991 F. Supp. 69, 75 (N.D.N.Y. 1998) (McAvoy, Chief Judge)); see Garcia v. Cty. of Westchester, No. 11 Civ. 7258 (KMK), 2017 U.S. Dist. LEXIS 191980, at *105 (S.D.N.Y. Nov. 20, 2017) (dismissing IIED on summary judgment where plaintiffs alleged being falsely arrested, beaten, stomped, and tasered by police). Additionally, public policy bars this claim against a governmental entity. See e.g., Piranzo v. N.Y. City Health & Hosps. Corp., 300 A.D.2d 548, 548 (2d Dept. 2002). Here, plaintiff's traditional tort claims for, inter alia, false arrest, malicious prosecution, and fabrication of evidence encompass his claim for IIED, which must be accordingly dismissed.

As to NIED, the "New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available." Romero v. City of New York, 839 F. Supp. 2d 588, 632 (E.D.N.Y. 2012) (citing Moore, 219 F. Supp. 2d 335 at

---

[6] Even if the Court finds that plaintiff's IIED claim accrued on October 6, 2015 (the date plaintiff's conviction was vacated), it would still be time barred as a matter of law as this action was commenced 2 and a half years later on April 19, 2018. (Dkt. No. 1).

339; see also Devito v. Barrant, 2005 U.S. Dist. LEXIS 22444, at *30 (E.D.N.Y. Aug. 23, 2005)

(dismissing claims of negligent and intentional infliction of emotional distress because "'the

conduct underlying the claim[s] falls within the ambit of traditional tort liability' and is included

in plaintiff's claims for assault and battery") (quoting Moore, 219 F. Supp. 2d 335 at 339). In

other words, plaintiff cannot assert a general claim of negligence in connection with a claim

stemming from an arrest. Boose v. City of Rochester, 421 N.Y.S.2d 740, 743 (4th Dep't 1979) (a

plaintiff seeking damages for an injury resulting from a wrongful arrest and detention "may not

recover under broad general principles of negligence . . . but must proceed by way of the

traditional remedies of false arrest and imprisonment"); see e.g., Bernard v. United States, 25

F.3d 98, 103 (2d Cir. 1994) (affirming district court's dismissal of plaintiff's New York State

law negligence claim under Boose). Accordingly, plaintiff must proceed by way of his

intentional tort claims, and his claim for NIED must be dismissed as a matter of law.

## POINT VI

### PLAINTIFF FAILS TO STATE A CLAIM FOR §1983 SUPERVISORY LIABILITY

Plaintiff has not adequately stated a claim for § 1983 supervisory liability.  First, it is well

settled that "an individual defendant cannot be held liable for damages [under § 1983] simply

because he or she holds a supervisory position." Stamile v. County of Nassau, 2014 U.S. Dist.

LEXIS 39320, *10 (E.D.N.Y. Mar. 25, 2014). Consequently, and "because *respondeat superior*

does not apply in Section 1983 actions, '[i]t is well settled in this Circuit that personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983.'" Id. at *9 (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).

Liability only attaches if the supervisor "(1) participated directly in the alleged

constitutional violation, (2) the defendant, after being informed of the violation through a report

or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon, 58 F.3d at 873.

Plaintiff has not alleged facts sufficient to maintain a valid cause of action for supervisory liability. Plaintiff's FAC makes conclusory allegations as to the 1st, 4th, and 5th Colon factors to the exclusion of the 2nd and 3rd factors. (See FAC, Akina Decl., Ex. A ¶ 212). As to supervisory defendants Borman, DeMartino, Connelly, Herbst, Mole, and Bayshim, plaintiff simply alleges that they acted "deliberately, recklessly and under color of law," were supervisors of unidentified officers, and either "knew or should have known" of misconduct by subordinate officers. (See id. ¶¶ 205, 207, 211). As to defendants Borman and Connelly, plaintiff baldly claims that they "were personally involved in the deprivation of Mr. Hincapie's constitutional rights." (See id. ¶ 206). Plaintiff fails to state sufficient facts supporting their alleged personal involvement, gross negligence, or deliberate indifference. Without more, these conclusory allegations are insufficient to state a valid claim for supervisory liability. See Twombly, 550 U.S. at 555.

Therefore, plaintiff's supervisory liability claim should be dismissed as a matter of law.[7]

## POINT VII

### PLAINTIF'S FAILURE TO INTERVENE CLAIM FAILS AS A MATTER OF LAW

Plaintiff cannot maintain a claim for failure to intervene. "A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being

---

[7] Although defendants DeMartino, Connelly, Herbst, Mole, and Bayshim have not been served, the Court could *sua sponte* dismiss plaintiff's claims against them.

violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). However, liability may only attach when, "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill, 839 F.2d at 11-12). Significantly, there can be no failure to intervene where there was no constitutional violation. Feinberg v. City of New York, No. 99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098, at *4 (S.D.N.Y. Aug. 13, 2004) ("if the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends") (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

The FAC is devoid of any facts sufficient to maintain a viable claim for failure to intervene. Plaintiff fails to allege how any of the individual officers had a realistic opportunity to intervene and prevent plaintiff's allegedly coerced confessions. Instead, plaintiff's FAC merely states that "those defendants that were present for but did not actively participate in the aforementioned unlawful conduct were aware of such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene." (FAC, Akina Decl., Ex. A, ¶ 224). This conclusory allegation, without more, falls far short of the standard required to state a claim for failure to intervene. See Iqbal, 556 U.S. at 677-78. Therefore, plaintiff's failure to intervene claim should be dismissed as a matter of law.

## POINT VIII

## PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY

Plaintiff brings a claim for municipal liability predicated solely upon a theory of a "policy, practice, and/or custom not to record police interrogations." (See FAC, Akina Decl., Ex. A ¶¶ 213-216).  As set forth below, plaintiff's municipal liability claim should be dismissed.

In order to prevail on a 42 U.S.C. § 1983 claim against a municipality, a plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1978). To do so, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries…[s]econd, the plaintiff must [also] establish a causal connection – an 'affirmative link' – between the policy and deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert. denied, 480 U.S. 916 (1987) (citing and quoting Oklahoma v. Tuttle, 471 U.S. 808, 823-24 n.8 (1985)). In other words, plaintiff must set forth facts supporting the inference that acts of the municipality itself were the cause of his injuries. See Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

Importantly, "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). Formulaic legal conclusions in a complaint are not entitled to the assumption of truth. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]." Hayes v. Perotta, 751 F. Supp. 2d 597, 601 (S.D.N.Y. Sept. 30, 2010); see Tuttle, 471 U.S. 808 at 823-24 ("proof of a single incident of unconstitutional activity is not sufficient to impose liability under

*Monell* . . . .”); see also Gordon v. City of New York Police Dep't 84th Precinct, No. 10 Civ. 3706 (CBA) (LB), 2012 U.S. Dist. LEXIS 44154 (E.D.N.Y. Mar. 29, 2012); Cuevas v. City of New York, No. 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, *12 (S.D.N.Y. Dec. 7, 2009) (“baldly asserting that Plaintiff’s injuries are the result of the City’s policies does not show this Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right”).

### a.      No Underlying Constitutional Violation

In order for a Monell claim to succeed, plaintiff must plead facts and present evidence showing an underlying violation of his constitutional rights. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). For the reasons stated above, plaintiff’s claims for an underlying constitutional violation must be dismissed, so his Monell claim must also be dismissed.

### b.      Plaintiff Fails to Allege an Official Policy or Practice

In the context of a motion to dismiss, “[t]o allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality’s governing authority or the act of a person with policymaking authority for the municipality.” Missel v. County of Monroe, 351 Fed. Appx. 543, 545 (2d Cir. 2009). An “official policy” may be implemented through a “policy statement, ordinance, regulation, or decision” that is officially promulgated by a municipality’s policy makers. Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003). Finally, “a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.” Decarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) (quoting Ricciuti, 941 F.2d at 123).

Here, plaintiff fails to allege *any* facts that tend to support the existence of an actual policy or decision by a policy maker regarding the recording of custodial interrogations in 1990. Plaintiff also fails to identity a custom or practice. Indeed, plaintiff references no other instances prior to September 3, 1990 to support his claim of a custom or practice of not recording custodial interrogations.[8] Therefore, plaintiff's claim must be dismissed.

**c.      Plaintiff Fails to Allege that a Policy or Custom Caused His Injury**

Assuming arguendo the existence of a policy or custom mandating that custodial interrogations not be recorded, plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of his federal rights." Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997); see also Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir. 2000). "[T]he alleged policy [must be] the proximate cause of their constitutional injury, not just a but-for cause." Albert v. City of New York, No. 17-cv-3957 (ARR) (SMG), 2018 U.S. Dist. LEXIS 179576, at *35 (E.D.N.Y. Oct. 18, 2018). As the Supreme Court in Canton stated:

> To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

City of Canton v. Harris, 489 U.S. 378, 391-92 (1989).

Here, plaintiff illogically alleges that if his interrogation was subject to recording, the alleged wrongdoing by the defendant officers would have been captured and his innocence would have been demonstrated. (FAC, Akina Decl., Ex. A ¶ 169). This fails for three reasons.

---

[8] To the extent that plaintiff references the Central Park Jogger ("CPJ") case, it is irrelevant to sustain his Monell claim. (See FAC, Akina Decl., Ex. A, ¶¶ 28-34). Plaintiff fails to allege that the failure to record interrogations resulted in a constitutional violation in the CPJ case. Moreover, the CPJ case resulted in a settlement and dismissal, which cannot support a Monell claim. Lynch v. City of New York, No. 16 Civ. 7355 (LAP), 2018 U.S. Dist. LEXIS 52301, at *42 (S.D.N.Y. Mar. 27, 2018); In re Mcray. 03 Civ. 9685 (DAB) (RLE) (SDNY), Dkt. No. 313.

First, while plaintiff's written confession was not recorded, his second video-recorded confession was recorded in the presence of a prosecutor. Second, the alleged practice of not recording custodial interrogations was not on its own a constitutional violation in 1990. Indeed, plaintiff does not allege otherwise. Third, plaintiff's allegation not only invites, but requires, rank speculation. For example, the allegation assumes that a video recording alone would have prevented the alleged coercive behavior. By that logic, no crime would ever be captured on video since it would always be deterred. In short, plaintiff has failed to demonstrate that the alleged policy or custom was the "moving force" behind his injury as opposed to a possible link in an attenuated causal chain. Therefore, plaintiff's <u>Monell</u> claim must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss in its entirety with prejudice, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
        May 17, 2019

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants City, Gonzalez, Casey, Christie, Borman, Connolly, Rosario, Rizzo, and Santoro*
100 Church Street
New York, New York 10007
(212) 356-2377

By: _____/s/_____

Raju Sundaran
W. KeAupuni Akina
*Senior Counsels*

To:   Gabriel P. Harvis, Esq.
      Baree Fett, Esq.
      Elefterakis, Elefterakis & Panek
      *Attorneys for plaintiff* (via ECF)

-25-