UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

JOHNNY HINCAPIE,

                         Plaintiff,

                v.

CITY OF NEW YORK; Detective CARLOS
GONZALEZ; Detective DONALD CASEY; Detective
JAMES CHRISTIE; Detective ARTHUR SWENSON;
Detective JOSE RAMON ROSARIO; Detective DANIEL
RIZZO; Detective MATTHEW SANTORO; Sergeant
SHARIF ALI; Sergeant JOHN HERBST; Sergeant
TIMOTHY CONNOLLY; Sergeant GARY BORMAN;
The Estate of Deputy Chief JOSEPH DEMARTINO;
Lieutenant VICTOR MOLE; Captain "JOHN"
BAYSHIM; JOHN and JANE DOE DETECTIVES 1-5;
and JOHN and JANE DOE SUPERVISORS 1-5,

                        Defendants.

---

18 CV 3432 (PAC) (RWL)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

ELEFTERAKIS, ELEFTERAKIS & PANEK
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116

June 17, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

RELEVANT BACKGROUND ........................................................................................... 1

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ...................................................................................................................... 3

I.      Hincapie's § 1983 wrongful conviction claims are timely ................................... 3

        A.  *McDonough* did not change the accrual date for Hincapie's claims ................. 5

        B.  Accrual of Hincapie's fair trial claims was deferred until January 25, 2017 ...... 7

II.     Hincapie's malicious prosecution claims survive ................................................. 8

        A.  The prosecution was favorably terminated ....................................................... 9

        B.  Hincapie's well-pleaded allegations rebut the presumption of probable cause .... 14

III.    Hincapie's *Brady* claim is well-pleaded ............................................................ 17

        A.  The withheld exculpatory statements of Ricardo Lopez are *Brady* ................. 17

        B.  Defendants also suppressed Tannisha Vasquez's exculpatory account ............. 18

IV.     Plaintiff's § 1983 coercion claim survives .......................................................... 19

V.      The emotional distress claims survive ................................................................. 19

VI.     Plaintiff plausibly alleges *Monell* liability ........................................................ 20

VII.    Defendants' personal involvement and supervisory liability arguments fail .......... 20

        A.  Plausible allegations in the FAC support supervisory liability ......................... 21

        B.  The remaining personal involvement arguments are premature and meritless ...... 23

VIII.   Equitable tolling should be applied to Hincapie's false arrest and imprisonment claims ...... 23

IX.     Hincapie's failure to intervene claims survive .................................................... 25

CONCLUSION ................................................................................................................. 26

<u>TABLE OF AUTHORITIES</u>

<span style="text-align:center">C<small>ASES</small></span>

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999) ..............................................................................4, 5

*Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012)......................................3

*Anderson v. City of New York*, 817 F.Supp.2d 77 (E.D.N.Y. 2011) ...........................................9

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ......................................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................................23

*Bailey v. City of New York*, 79 F. Supp. 3d 424 (E.D.N.Y. 2015) ..........................................4, 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................3

*Bellamy v. City of New York*, 12 CV 1025 (AMD) (PK), 2017 WL 2189528 (E.D.N.Y. May 17, 2017).......................9

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019) ..................................................17, 20

*Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015) .....................................................17

*Blount v. City of New York*, 15 CV 5599 (PKC) (JO), 2019 WL 1050994 (E.D.N.Y. Mar. 5, 2019) ...........................12

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003)..............................................................16

*Boyette v. Lefevre*, 246 F.3d 76 (2d Cir. 2001) .......................................................................15

*Bradford v. Scherschligt*, 803 F.3d 382 (9th Cir. 2015) .............................................................7

*Brandon v. City of New York*, 705 F.Supp.2d 261 (S.D.N.Y. 2010).........................................15

*Bristol v. Nassau Cty.*, 685 F. App'x 26 (2d Cir. 2017) ..............................................................8

*Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010) .....................................................2, 10

*Cantolino v. Danner*, 96 N.Y.2d 391, 395 (2001) ....................................................................10

*Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc) .................................................7

*Celestin v. City of New York*, 581 F.Supp.2d 420 (E.D.N.Y. 2008).........................................14

*Chimurenga v. City of New York*, 45 F. Supp. 2d 337 (S.D.N.Y. 1999) ...............................12, 16

*Clark v. City of New York*, 09 CV 2533 (PKC), 2015 WL 5719612 (E.D.N.Y. Sept. 29, 2015) ............................12

*Coleman v. Rice*, 14 CV 1469, 2015 U.S. Dist. LEXIS 9532  (N.D.N.Y. Jan. 28, 2015)........................................24

*Colon v. City of New York*, 60 N.Y.2d 78 (1983) ....................................................................15

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) .......................................................................22

*Covington v. Warden of C–95*, 93 CV 1958, 1996 WL 75211 (E.D.N.Y. Feb. 8, 1996)........................20

*DaCosta v. Tranchina*, 281 F. Supp. 3d 291 (E.D.N.Y. 2017), *reconsideration denied*, 285 F. Supp. 3d 566 (E.D.N.Y. 2018) ................................16

*Davis v. Kelly*, 160 F.3d 917 (2d Cir. 1998) .......................................................................20, 21

*Dufort v. City of New York*, 874 F.3d 338 (2d Cir. 2017) .........................................................12

*Ellis v. City of Chi.*, 13 CV 2382, 2016 U.S. Dist. LEXIS 5817 (N.D. Ill. Jan. 19, 2016) .........................24

*Floyd v. Atty. Gen. of Pennsylania*, 722 F. App'x 112 (3d Cir. 2018) .........................................7

*Gannon v. City of New York*, 917 F. Supp. 2d 241 (S.D.N.Y. 2013) .........................................16

*Global Network Comms., Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) .......................3, 11

*Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013) ....................................................21

*Guerrero v. City of New York*, 16 CV 516 (JPO), 2017 WL 2271467 (S.D.N.Y. May 23, 2017)..................................25

*Hamilton v. City of New York*, 15 CV 4574 (CBA) (SJB), 2019 WL 1452013 (E.D.N.Y. Mar. 19, 2019) .......................2

*Hargroves v. City of New* York, 694 F. Supp. 2d 198 (E.D.N.Y. 2010) ....................................24

*Heck v. Humphrey*, 512 U.S. 477 (1994) ............................................................................passim

*Hicks v. Marchman*, 719 F. App'x 61 (2d Cir. 2018) ..............................................................14

*Holland v. Florida*, 560 U.S. 631 (2010) ...............................................................................25

*In re Jones*, 670 F.3d 265 (D.C. Cir. 2012) ............................................................................24

*Jean-Laurent v. Lawrence*, 12 CV 1502 (JPO), 2014 WL 1282309 (S.D.N.Y. Mar. 28, 2014).........................21

*Jovanovic v. City of New York*, 04 CV 8437 (PAC), 2006 WL 2411541 (S.D.N.Y. Aug. 17, 2006)................5, 10, 16

*Jovanovic v. City of New York*, 04 CV 8437 (PAC), 2010 WL 8500283 (S.D.N.Y. Sept. 28, 2010) ...............................2

*Kinzer v. Jackson*, 316 F.3d 139 (2d Cir. 2003) .....................................................................15

*Kyles v. Whitley*, 514 U.S. 419 (1995) ..................................................................................18

*Lanning v. City of Glen Falls*, 908 F.3d 19 (2d Cir. 2018) ..................................................12, 14

*Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001) ......................................................................15

*Lopez v. City of New York*, 901 F. Supp. 684 (S.D.N.Y. 1995) ..................................................3

*Lowth v. Town of Cheektowaga,* 82 F.3d 563 (2d Cir. 1996) ................................................16

*Maclin v. Paulson,* 627 F.2d 83 (7th Cir. 1980) ...................................................................20

*Maggette v. Dalsheim,* 709 F.2d 800 (2d Cir. 1983) ............................................................21

*Mallard v. Potenza,* 376 F. App'x 132 (2d Cir. 2010) ..........................................................23

*McClellan v. Smith,* 439 F.3d 137 (2d Cir. 2006) .................................................................14

*McDonough v. Smith,* 898 F.3d 259 (2d Cir. 2018) ................................................5, 6, 7, 25

*McDonough v. Smith,* No. 18-485, 2019 WL 166879 (U.S. Jan. 11, 2019) ............................5

*Miller v. Cuccia,* 201 F.3d 431 (2d Cir. Nov. 18, 1999) .......................................................13

*Mills v. Barnard,* 869 F.3d 473 (6th Cir. 2017) .....................................................................7

*Mondragón v. Thompson,* 519 F.3d 1078(10th Cir. 2008) .....................................................8

*Morel v. Reed,* 11 CV 1808, 12 CV 5145, 2015 WL 3755976 (E.D.N.Y. June 16, 2015) ............15

*Murphy v. Lynn,* 118 F.3d 938 (2d Cir. 1997) ................................................................10, 11

*Newton v. City of New York,* 566 F. Supp. 2d 256 (S.D.N.Y. 2008) ......................................19

*Nnodimele v. Derienzo,* 13 CV 3461 (ARR) (RLM), 2016 WL 3661273 (E.D.N.Y. July 5, 2016) ............4

*Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir. 1986) ..............................................................21

*People v. Hamilton,* 115 A.D.3d 12 (2d Dep't 2014) .............................................................13

*People v. Hincapie,* 10641/90, Decision and Order (Slip Op.) (Oct. 6, 2015) .........................1

*People v. Hincapie,* 142 A.D.3d 886 (N.Y. App. Div. 2016) ....................................................1

*Pereyra v. Eaddy,* 13 CV 4760 (PAC) (MHD), 2015 WL 3953606 (S.D.N.Y. June 29, 2015) ............25

*Phillips v. City of New York,* 871 F. Supp. 2d 200 (E.D.N.Y. 2012) ......................................23

*Poventud v. City of New York,* 750 F.3d 121 (2d Cir. 2014) (en banc) .......................... passim

*Roberts v. Babkiewicz,* 582 F.3d 418 (2d Cir. 2009) ............................................................12

*Russell v. Smith,* 68 F.3d 33 (2d Cir. 1995) ........................................................................13

*Russo v. City of Bridgeport,* 479 F.3d 196 (2d Cir. 2006) ....................................................16

*Satchell v. Dilworth,* 745 F.2d 781 (2d Cir. 1984) ...............................................................20

*Scotto v. Almenas,* 143 F.3d 105 (2d Cir. 1998) ..................................................................14

*Shabazz v. Kailer,* 201 F. Supp. 3d 386 (S.D.N.Y. 2016) .......................................................4

*Smalls v. City of New York,* 181 F. Supp. 3d 178 (E.D.N.Y. 2016) .......................................12

*Smith v. Cain,* 565 U.S. 73 (2012) ......................................................................................15

*Smith v. Campbell,* 782 F.3d 93 (2d Cir. 2015) .....................................................................8

*Spak v. Phillips,* 857 F.3d 458 (2d Cir. 2017) .....................................................................10

*Tankleff v. Cty. of Suffolk,* 09 CV 1207 (JS) (AYS), 2017 WL 2729084 (E.D.N.Y. June 23, 2017) ............9, 14

*Torres v. Jones,* 47 N.E.3d 747 (2016) ...............................................................................15

*United States v. Green,* 480 F.3d 627 (2d Cir. 2007) .............................................................9

*United States v. Halloran,* 821 F.3d 321 (2d Cir. 2016) .........................................................7

*United States v. Jimenez,* 451 F.3d 97 (2d Cir. 2006) ...........................................................5

*United States v. One Assortment of 89 Firearms,* 465 U.S. 354 (1984) .................................13

*United States v. Thorn,* 659 F.3d 227 (2d Cir. 2011) ...........................................................13

*United States v. Wilkerson,* 361 F.3d 717 (2d Cir. 2004) .......................................................5

*Walker v. City of New York,* 974 F.2d 293 (2d Cir. 1992) ....................................................17

*Wallace v. Kato,* 549 U.S. 384 (2007) .......................................................................6, 7, 8, 24

*Warren v. Pataki,* 823 F.3d 125 (2d Cir. 2016) ...................................................................22

*Wharton v. Cty. of Nassau,* 07 CV 2137 (RRM) (ETB), 2010 WL 3749077 (E.D.N.Y. Sept. 20, 2010) ............24

*White v. Frank,* 855 F.2d 956 (2d Cir. 1988) .......................................................................15

*Williams v. Koenigsmann,* 03 CV 5267 (SAS), 2004 WL 315279 (S.D.N.Y. Feb. 18, 2004) ............21

*Wray v. City of New York,* 490 F.3d 189 (2d Cir. 2007) .......................................................20

*Wu v. City of New York,* 934 F. Supp. 581 (S.D.N.Y. 1996) .................................................16

*Ying Li v. City of New York,* 246 F. Supp. 3d 578 (E.D.N.Y. 2017) .....................................12

*Zahrey v. City of New York,* 98 CV 4546 (DCP) (JCF), 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009) ............19

S T A T U T E S

42 U.S.C. § 1983 ............................................................................................................. passim

N.Y.C.P.L. § 160.60 ..........................................................................................................2, 9

N.Y.C.P.L. § 210.40 ...................................................................................................................9, 10

N.Y.C.P.L. § 440.10 ...................................................................................................................1, 8, 14

N.Y.C.P.L. § 440.10(1)(g) ........................................................................................................1

N.Y.C.P.L. § 60.60(1) ................................................................................................................9

## RULES

N.Y.C.P.L.R. § 204 (2018) ......................................................................................................25

## TREATISES

Restatement (Second) of Torts at § 659(c) ..........................................................................11

Restatement (Second) of Torts, § 659, cmt. e ...................................................................13

RELEVANT BACKGROUND

Inside the Midtown North Precinct on September 3, 1990, New York City detectives forced plaintiff Johnny Hincapie – barely eighteen, law-abiding, vulnerable and factually innocent – to falsely confess to the felony murder of "Utah Tourist" Brian Watkins. This coerced false confession was the *only* evidence used to convict him at trial – no witness positively identified him, and no forensics ever linked him to the crime. The individual defendants' intentional misconduct thus caused Mr. Hincapie to spend over 25 years wrongfully imprisoned.[1] Compounding the tragedy, clear evidence of plaintiff's innocence and defendants' malfeasance existed, but was never heard by the jury.[2] FAC, ¶¶ 20-179.

Plaintiff fought to overturn his wrongful conviction for over two decades. After exhausting all appeals, Hincapie filed a N.Y.C.P.L. § 440.10 motion on the basis of actual innocence and newly-discovered evidence. An evidentiary hearing was conducted and, with eyewitnesses asserting Hincapie's innocence broadly credited and prosecutors' arguments rejected, the motion was granted. The hearing court held that Hincapie had met his burden of due diligence as to three credible eyewitnesses, who each independently satisfied the newly-discovered evidence standard of N.Y.C.P.L. § 440.10(1)(g), i.e. each created a probability of acquittal on retrial.[3] Manhattan prosecutors appealed to the Appellate Division, First Department and lost (in a unanimous decision),[4] at which point they elected not to

---

[1] In total, plaintiff spent 9,164 days (more than half his life) incarcerated as a murderer.

[2] If it should please the Court, this case echoes the "Central Park Five." Both involve mistreatment of young minority suspects following sensationalized, politicized "wolfpack" incidents at the peak of New York's late-1980s crime epidemic. In each, unrecorded coercive tactics created videotaped statements grafting flawed theories onto powerless teens. They even share interrogators: defendants Carlos Gonzalez and Jose Rosario feature prominently in both cases. *See* First Amended Complaint, DE #1 ("FAC") ¶¶ 28-34, 89, 134, 162.

[3] Indeed, applying one of the strictest standards in the law, the hearing court (Padró, J.) nearly found "actual innocence": "The *credible* testimony of [three eyewitnesses] that *Johnny Hincapie was not present on the subway platform during the time of the actual robbery*, combined with Hincapie's own testimony…*raises a real doubt as to whether the defendant was a participant in the crime.*" *People v. Hincapie*, 10641/90, Decision and Order (Slip Op.) (Oct. 6, 2015) annexed to the Declaration of Gabriel P. Harvis dated June 17, 2019 ("Harvis Decl.") as Exhibit 2 ("440 decision"), p. 33 (emphasis added); *id.* at 41 (holding confession was "demonstrably recanted…from the moment [plaintiff] met his first attorney").

[4] *People v. Hincapie*, 142 A.D.3d 886 (N.Y. App. Div. 2016) (noting that "the court properly granted defendant's [N.Y.C.P.L. § 440.10] motion").

retry plaintiff and the New York State Supreme Court dismissed the indictment, with prejudice, pursuant to N.Y.C.P.L. § 160.60 – a final, favorable termination. *See* DE #102-5, 2:23-25 (the prosecution admits it could not win at retrial: "[I]t is unlikely at this time that we can convince a jury of Mr. Hincapie's guilt beyond a reasonable doubt."). Plaintiff now sues under 42 U.S.C. § 1983 to hold defendants accountable for his wrongful conviction and over 25 years of lost liberty.

Defendants' motion is a delay tactic that fails to address, let alone appropriately credit, the substance of plaintiff's well-pleaded allegations, presenting arguments contrary to settled law. For example, defendants claim a 2018 Second Circuit panel decision addressing pretrial claims overruled the Supreme Court and *en banc* Second Circuit, both of which have held wrongful conviction claims like Hincapie's do not accrue until the conviction is overturned and the indictment dismissed. *See Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994); *Poventud v. City of New York*, 750 F.3d 121, 132–34 (2d Cir. 2014) (en banc); *Hamilton v. City of New York*, 15 CV 4574 (CBA) (SJB), 2019 WL 1452013, *16 (E.D.N.Y. Mar. 19, 2019) (Amon, J.) (Rejecting defendants' contention: "[T]he Court is not at liberty to ignore governing and applicable Supreme Court precedent.").

Defendants also disregard controlling law and the plain language of the 440 decision and certificate of disposition to suggest that prosecutors' opinion of probable cause is relevant (indeed determinative) on the issue of favorable termination, when the opposite is true. *See Cameron v. City of New York*, 598 F.3d 50, 65 (2d Cir. 2010) (holding prosecutors' opinions as to probable cause "irrelevant in virtually all cases involving claims of malicious prosecution"); *accord Jovanovic v. City of New York*, 04 CV 8437 (PAC), 2010 WL 8500283, *6 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 486 F. App'x 149 (2d Cir. 2012) (Crotty, J.) ("The subjective beliefs of…the District Attorney's office…are of no consequence when considering whether Jovanovic received a favorable termination.").[5]

---

[5] Plaintiff previously raised defendants' dishonest presentation of this argument in his opposition to their pre-motion letter (DE #86) and the issue was addressed on the record at the March 26, 2019 pre-motion conference. But defendants' brief

<u>LEGAL STANDARD</u>

A Rule 12 motion must be denied if the complaint includes "enough facts to state a claim to relief that is plausible on its face," that is, enough factual allegations, taken as true, "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (applying *Twombly*). "[I]n determining whether a complaint states a claim that is plausible, the court is required to proceed on the assumption that all the factual allegations in the complaint are true." *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal quotation marks and alterations omitted). "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12…motion." *Id.*

In addition to the allegations in the complaint, the Court may also "take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network Comms., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Taking judicial notice of documents outside the complaint does not require a Rule 12 motion to be converted into a Rule 56 motion, and doing so is not appropriate here, where no depositions have yet taken place. *See id.* at 155-56.

<u>ARGUMENT</u>

## I.   Hincapie's § 1983 wrongful conviction claims are timely.

Defendants' argument that Hincapie's § 1983 wrongful conviction claims are time-barred flatly conflicts with binding Supreme Court precedent. In *Heck v. Humphrey*, the Supreme Court established an unambiguous rule of accrual for wrongful conviction claims like Hincapie's: "[A] §

---

nevertheless again misrepresents the basis for plaintiff's exoneration. DE #103 at Point I(B) ("[T]here is *no doubt* that the termination of plaintiff's criminal case was an 'interest of justice' dismissal.") (emphasis added); *but see, e.g., Lopez v. City of New York*, 901 F. Supp. 684, 689 n.1 (S.D.N.Y. 1995) ("[N.Y.C.P.L §] 210.40 pertains to dismissals of indictments in 'the interest of justice[.]'"); FAC, ¶ 193 (reflecting favorable dismissal pursuant to N.Y.C.P.L. § 160.60).

3

1983 cause of action for damages attributable to an unconstitutional conviction…does not accrue until the conviction…has been invalidated." 512 U.S. at 489-90. Thus, Hincapie's § 1983 wrongful conviction claims for fair trial, coercion and *Brady* violations accrued on January 25, 2017, when his indictment was dismissed, and are timely under § 1983's three-year statute of limitations.

*Heck* controls here. Heck alleged that defendants caused his conviction by knowingly destroying exculpatory evidence and causing an "unlawful voice identification procedure" to be used at trial. *Id*. at 479. Hincapie likewise claims that his wrongful conviction was caused by coercion and the suppression of exculpatory evidence. *Heck* held that "the statute of limitations poses no difficulty" for such claims because, until the conviction has been invalidated, "the § 1983 claim has not yet arisen." *Id.* at 489. Rather, "[j]ust as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction…does not accrue until the conviction…has been invalidated." *Id.* at 489-90 (internal citation omitted).

Following *Heck*, the Second Circuit has explicitly instructed that "where the viability of the plaintiff's claim depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged government misconduct." *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999). And courts in this circuit have repeatedly and consistently held that § 1983 wrongful conviction claims, like Hincapie's, cannot be brought until the conviction has been set aside and the indictment dismissed. *See, e.g.*, *Poventud*, 750 F.3d at 132-34 (holding § 1983 *Brady* claim did not accrue until indictment was dismissed); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016) (holding § 1983 evidence fabrication claim accrual deferred until "the case against the plaintiffs is favorably terminated"); *Nnodimele v. Derienzo*, 13 CV 3461 (ARR) (RLM), 2016 WL 3661273, *3 (E.D.N.Y. July 5, 2016) (same); *Bailey v. City of New York*, 79 F. Supp. 3d 424, 455 (E.D.N.Y. 2015) (same); *Jovanovic v. City of New York*, 04 CV 8437 (PAC), 2006 WL 2411541, *12

(S.D.N.Y. Aug. 17, 2006) (same).

A. *McDonough* did not change the accrual date for Hincapie's claims.

In the face of this consistent precedent, defendants do not cite a *single case* holding that § 1983 wrongful conviction claims, like Hincapie's, accrue at any point before the conviction is invalidated. Instead, defendants rely on the Second Circuit's decision in *McDonough v. Smith*, 898 F.3d 259 (2d Cir. 2018). The Supreme Court has granted certiorari to review that decision—which reached a different result than all five other circuits to address the same question. *McDonough v. Smith*, No. 18-485, 2019 WL 166879 (U.S. Jan. 11, 2019). But even treating, for now, the Second Circuit's decision in *McDonough* as good law, it would not have anything like the effect defendants claim because it did not involve a claim for wrongful conviction.

Unlike this case, *McDonough* did not involve a conviction at all; it addressed only a *pretrial* fabrication claim. *McDonough*, 898 F.3d at 269. The *McDonough* panel obviously did not and could not overrule *Heck. See, e.g., United States v. Jimenez*, 451 F.3d 97, 104 (2d Cir. 2006) (noting the Second Circuit "lack[s] the authority to overrule decisions of the Supreme Court"). Nor could it overrule the prior Second Circuit panel decision in *Amaker*, 179 F.3d 48, much less the *en banc* decision in *Poventud*, 750 F.3d at 121. *See, e.g., United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) (noting however they might decide a question in the first instance, panels "are bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court"). And the *McDonough* panel never claimed it was doing so. To the contrary, it expressly distinguished *Heck*: "McDonough was never convicted, so *Heck* is not called into play." *McDonough*, 898 F.3d at 269 (internal quotation marks omitted).

McDonough alleged that the defendants had fabricated false affidavits, testimony, and DNA evidence in order to wrongly implicate him in election fraud. *Id.* at 263-64. He claimed that this evidence was used to apprehend him and force him to trial twice—the first ending in a mistrial and

the second in an acquittal. *Id.* at 264. Although McDonough suffered a liberty deprivation when he was arrested and required to stand trial, his acquittal meant that he was never convicted or sentenced. *Id.* at 264, 266. Nor did his damages arise from the unfair use of evidence at *trial*; because he won a mistrial and then an acquittal, he was never detained due to a conviction. The court found that "under the circumstances here" McDonough's § 1983 fabrication claim accrued when he was both (1) aware of the fabricated evidence and (2) it had been used to arrest him and hold him over for trial—at the latest, at the end of his first trial. *Id.* at 267. Because McDonough sued just under three years after the end of his *second* trial, the court held his claim was brought too late. *Id.* at 264, 267.

In differentiating between pretrial claims (like McDonough's) and claims for wrongful conviction (like those in *Heck*, and Hincapie's claims here), the *McDonough* court relied on *Wallace v. Kato*, 549 U.S. 384 (2007). In *Wallace*, the Supreme Court held that a claim based on wrongful arrest—which indisputably would otherwise have accrued well before any conviction took effect, and quite possibly even before indictment—did not benefit from *Heck*'s delayed accrual rule. *Id.* at 393-94. As the *Wallace* Court explained, *Heck* "delays what would otherwise be the accrual date of a tort action until the setting aside of an *extant conviction*, which success in that tort action would impugn." *Id* at 393 (emphasis in original). But for claims like false arrest, which at most impugn an "anticipated future conviction" at accrual, *Heck*'s rule does not apply, and the claim accrues at the time of the initial injury. *Id.* at 393-94. Since *Wallace*, the Second Circuit has confirmed that "[n]ot every § 1983 claim that arises out of a criminal case requires that the underlying criminal process reach a favorable termination." *Poventud*, 750 F.3d at 132 (listing excessive force and unlawful search as examples of claims that may not fall under *Heck*'s rule).

The *McDonough* court considered claims for pretrial fabrication of evidence to be more like the false arrest claims in *Wallace* than the wrongful conviction claims in *Heck*. *McDonough*, 898 F.3d at 268-69. The four other circuit courts to consider the issue since *Wallace* have come to the opposite

conclusion; they interpret *Wallace* to require that *all* § 1983 fabrication claims not accrue until favorable termination of the criminal proceeding, just like the most analogous common law claim, malicious prosecution.[6]

     The Hon. Carol Bagley Amon recently rejected defendants' argument on similar facts:

> *Heck* is undoubtedly "called into play" in this case, and the Court is not at liberty to ignore governing and applicable Supreme Court precedent. Indeed, much as the Second Circuit declined to address *Heck* because the plaintiff was never convicted, citing *Wallace*, *Wallace* compels this Court to consider *Heck*, because Hamilton *was* convicted. As explained above, under *Heck*, the Court concludes that Hamilton's claim did not accrue until his conviction was invalidated in 2015, because his fabrication of evidence claim—if brought earlier—would have necessarily implied the invalidity of his 1992 conviction. Accordingly, Hamilton's claim is timely.

*Hamilton*, 2019 WL 1452013 at *16 (citations omitted).

     Presumably the Supreme Court will settle this dispute. But should the *McDonough* decision stand, it would at most limit damages recoverable for pretrial detention on the § 1983 fabrication theory; it cannot make Hincapie's § 1983 wrongful conviction claim untimely.[7]

## B.   Accrual of Hincapie's fair trial claims was deferred until January 25, 2017.

     Piggy-backing on the *McDonough* decision, defendants repeatedly mischaracterize the *Heck* bar as "tolling" the statute of limitations when, as a matter of well-settled law, it defers accrual

---

[6] *See Floyd v. Atty. Gen. of Pennsylania*, 722 F. App'x 112, 114 (3d Cir. 2018); *Castellano v. Fragozo*, 352 F.3d 939, 959-60 (5th Cir. 2003) (en banc); *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017); *Bradford v. Scherschligt*, 803 F.3d 382, 388-89 (9th Cir. 2015); *Mondragón v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008).

[7] Defendants also suggest that Hincapie's § 1983 *Brady* claims are time-barred. DE #103, p. 10. Not only do defendants not cite a single case finding that a *Brady* claim accrues before the conviction is overturned, they cite two binding cases— *Heck* and *Poventud*—that expressly hold the opposite. *See Heck*, 512 U.S. at 489-90; *Poventud*, 750 F.3d at 132-34 (holding § 1983 *Brady* claim accrued when the tainted conviction was overturned). *McDonough* could not have overruled those cases had it tried (which it did not). The *McDonough* court did not address *Brady* claims at all, and defendants do not attempt to argue how *McDonough*'s rule for pretrial fabrication claims could possibly apply to § 1983 claims for *Brady* violations, which only become complete if the evidence remains suppressed through the end of trial. *See, e.g., United States v. Halloran*, 821 F.3d 321, 341-42 (2d Cir. 2016) (holding there was no *Brady* violation even when exculpatory evidence was disclosed eight days into the trial).

altogether. DE #103 at Point II(b); *see, e.g., Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015) ("[T]he *Heck* rule [does not] operate as a toll on the statute of limitations."); *Wallace*, 549 U.S. at 393 (analyzing "the *Heck* rule for deferred accrual"). This alone is fatal to defendants' timeliness argument – it means plaintiff had three years from the termination of the criminal proceedings to commence his § 1983 fair trial claims, which occurred under any analysis.

Defendants engage in further sophistry on this point. Again without authority and contrary to law, defendants assert that the *Heck* bar was lifted in October 2015 (when the 440 motion was granted, leaving plaintiff subject to retrial), without mentioning prosecutors' unsuccessful appeal or the January 25, 2017 dismissal, which is in fact the operative accrual date. DE #103, Point II(b).[8] *See* Certificate of Disposition, annexed to the Harvis Decl. as Exhibit 1 (reflecting dismissal of charges on January 25, 2017); *Bristol v. Nassau Cty.*, 685 F. App'x 26, 29 (2d Cir. 2017) (no "termination of proceedings" for purposes of § 1983 damages claim where plaintiff still subject to retrial) (citation omitted); *Poventud*, 750 F.3d at 131-32 (holding that a § 1983 damages action cannot be asserted "unless the underlying criminal cases finally end in failure," and "the reversal of a conviction and remand for a new trial does not constitute such a termination") (brackets and internal quotation marks omitted). Based on binding law, the operative timeline is thus as follows:

- ⊙ January 25, 2017   → Dismissal of indictment with prejudice
- ⊙ March 27, 2017    → Notice of claim filed (61 days later)
- ⊙ June 15, 2017     → G.M.L. § 50-h hearing
- ⊙ April 19, 2018    → Commencement (1 year, 2 months and 25 days later)

Accordingly, plaintiff's claims are timely and defendants' motion should be denied.

## II.   Hincapie's malicious prosecution claims survive.

Turning to Hincapie's § 1983 and state law malicious prosecution claims, defendants once

---

[8] Elsewhere in their brief, defendants admit that Hincapie's criminal case terminated on January 25, 2017. DE #103, Point I(b)-(c) ("[T]here is no doubt that the *termination of plaintiff's criminal case* was an 'interest of justice' *dismissal.*") (citing January 25, 2017 hearing transcript) (emphasis added); *see also supra* at n.5.

again misrepresent the applicable facts and legal standard to avoid addressing the merits of Hincapie's allegations. Without even acknowledging the certificate of disposition, which alone is dispositive, defendants falsely suggest that plaintiff's criminal case was dismissed "in the interest of justice" pursuant to N.Y.C.P.L. § 210.40 – an utterly frivolous position. DE #103 at Point I(b). Nevertheless, as a matter of law, Hincapie has adequately pleaded a favorable termination and likewise rebutted the grand jury presumption. FAC at ¶¶ 20-179, 192-93; N.Y.C.P.L. § 160.60 (New York favorable termination statute); *see, e.g., Tankleff v. Cty. of Suffolk*, 09 CV 1207 (JS) (AYS), 2017 WL 2729084, *21 (E.D.N.Y. June 23, 2017) ("If the confession was fabricated, that alone could be sufficient to rebut the presumption of probable cause.") (citation omitted).

## A. The prosecution was favorably terminated.

Plaintiff's certificate of disposition states: "The above[-]mentioned dismissal *is a termination of the criminal action in favor of the accused* pursuant to [N.Y.C.P.L.] Section 160.60." FAC at ¶ 193 (emphasis added); *see* Certificate of Disposition, Harvis Decl., Exhibit 1. *United States v. Green*, 480 F.3d 627, 632 (2d Cir. 2007) (a certificate of disposition "constitutes presumptive evidence of the facts stated in such certificate") (quoting N.Y.C.P.L. § 60.60(1)) (internal quotation marks omitted).

Courts in this circuit have uniformly concluded that such outcome constitutes a favorable termination for malicious prosecution purposes. *See, e.g., Regeda*, 2015 WL 5751117 at *2; *Anderson v. City of New York,* 817 F.Supp.2d 77, 92 (E.D.N.Y. 2011)*; Bellamy v. City of New York*, 12 CV 1025 (AMD) (PK), 2017 WL 2189528, *31 (E.D.N.Y. May 17, 2017), *aff'd in part, vacated in part, remanded on other grounds,* 914 F.3d 727 (2d Cir. 2019) (holding, as a matter of law, that "dismissal of the indictment pursuant to Criminal Procedure Law Section 160.60 constitutes a 'favorable termination' for purposes of [a] malicious prosecution claim").

As Your Honor has explained (in the context of a genuine 'interest of justice' dismissal):

> The dismissal of the indictment with prejudice ended the prosecution
> in Jovanovic's favor. Contrary to Defendants' suggestion, an acquittal
> is not necessary. As the New York Court of Appeals made clear
> in *Cantolino v. Danner*, "any termination of a criminal prosecution,
> such that the criminal charges may not be brought again, qualifies as
> a favorable termination, so long as the circumstances surrounding
> the termination are not inconsistent with the innocence of the
> accused." 96 N.Y.2d 391, 395 (2001)… After reversal and remand,
> Jovanovic was cloaked again in the constitutional presumption of
> innocence. The subsequent dismissal with prejudice in the interests of
> justice is fully "consistent with innocence."

*Jovanovic*, 2006 WL 2411541 at *10, *reconsidered in part on other grounds,* 2008 WL 355515 (S.D.N.Y. Feb. 7, 2008); *id.* ("Defendants' argument that the conviction was reversed on a 'legal technicality' so that Jovanovic's guilt was never called into question is frivolous.").

Defendants' argument that the dismissal of Hincapie's indictment was in the interest of justice (i.e. pursuant to N.Y.C.P.L. § 210.40) is simply wrong, irrespective of the purported belief of any prosecutor. DE #103 at Point I(b). *See Cameron v*, 598 F.3d at 65; *Jovanovic*, 2010 WL 8500283 at *6 ("The subjective beliefs of the members of the District Attorney's office…are of no consequence when considering whether Jovanovic received a favorable termination.").

"Under the common law…a termination of the existing prosecution is sufficient for a malicious prosecution claim to accrue." *Spak v. Phillips*, 857 F.3d 458, 464 (2d Cir. 2017). This is so even where the dismissal "is not the equivalent of a dismissal of a criminal prosecution with prejudice, because jeopardy does not attach." *Id.* at 463. The only exception to this rule is when the dismissal "is entered for reasons that are not indicative of defendant's innocence"—an exception that "is defined narrowly" to include instances where the termination was caused by the defendant's own misconduct or the result of plea bargaining. *Id.* at 464. Put otherwise, "the dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution"; if so, the termination is favorable. *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997) (internal quotation marks and alteration omitted).

In most cases, the prosecutor's independent decision to abandon a prosecution "compels an inference" that such grounds were lacking. *Id.* at 949-50 (applying this reasoning to a speedy trial dismissal); *see also Spak*, 857 F.3d at 463 ("[A]s a general matter a *nolle prosequi* [or unilateral dismissal by the prosecution] constitutes a 'favorable termination' for the purpose of determining when a Section 1983 claim accrues."); Restatement (Second) of Torts at § 659(c) (favorable termination met by "the formal abandonment of the proceedings by the public prosecutor").

The dismissal of Hincapie's indictment not only "compels an inference" that that prosecutors lacked "a reasonable grounds for the prosecution," *Murphy*, 118 F.3d at 949—the New York County District Attorney ("DANY") explicitly stated that it lacked such grounds. As defendants' own brief admits, DANY recommended dismissal of the indictment based on its concession that it lacked enough evidence to retry Hincapie. DE #103 at p. 7 (quoting DANY: "[I]t is unlikely at this time that we can convince a jury of Mr. Hincapie's guilt beyond a reasonable doubt."); *see* FAC at ¶ 192. DANY's dismissal recommendation, submitted by defendants, further bolsters this point. At this stage, the Court cannot review the document for its truth, *Global Network Comms.*, 458 F.3d at 157, but the Court can take judicial notice that the stated reason for abandoning the prosecution was that DANY expected to lose at trial:

> There is a significant doubt that a re-trial of these charges would result in a conviction in light of the time that has passed since the crime and the original trial, the death of a key witness, Sherwin Watkins,[9] the problematic nature of the lineup identification of Hincapie as a perpetrator, the testimony of newly-discovered witness, Mariluz Santana, the availability of an additional witness (co-defendant Ricardo Lopez) whose prior statement tended to exonerate Hincapie, but who was unavailable to Hincapie at his trial, and the People's inability to establish that Hincapie's claims of alibi and coercion are recent fabrications.

---

[9] Sherwin Watkins *never* identified or otherwise implicated Hincapie in the crime. FAC, ¶¶ 109-10 ("No one ever positively identified Mr. Hincapie as taking part in the Watkins robbery or murder, either before or at trial.").

DE #90-4 at pp. 3-4. The only difference between Hincapie's dismissal and the speedy trial dismissal in *Murphy* or the *nolle prosequi* in *Spak* is that DANY made explicit what was only implicit in those dismissals—it had no reasonable grounds for prosecution. *Murphy*, 118 F.3d at 949; *Spak*, 857 F.3d at 463; *see also Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) (observing that there are "circumstances in which even a bare voluntary dismissal may, in context, indicate the innocence of the accused.").[10]

Defendants base their misguided argument on *Lanning v. City of Glen Falls*, 908 F.3d 19 (2d Cir. 2018), but *Lanning* does not help them. *Lanning* held only that the elements of § 1983 malicious prosecution are governed by federal common law and cannot be altered by changes in state law. *Lanning*, 908 F.3d at 25.[11] Rather than raising the bar on the favorable termination requirement, as defendants suggest, *Lanning* reaffirmed the principle expressed in *Murphy* and the common law that abandonment of a prosecution constitutes favorable termination under § 1983. *Id.* at 27 n.6; *see Blount v. City of New York*, 15 CV 5599 (PKC) (JO), 2019 WL 1050994, *4-5 (E.D.N.Y. Mar. 5, 2019) ("Distilled to its essence, *Lanning* holds that New York state tort law does not define or limit the scope of liability under § 1983 for malicious prosecution, except to the extent that New York law reflects

---

[10] The plain language of DANY's dismissal recommendation leaves no room for ambiguity, but any dispute regarding DANY's motivation to dismiss Hincapie's indictment raises a jury question that cannot be resolved at this stage. *See, e.g., Ricciuti*, 124 F.3d at 131 ("Where…the reasons for a dismissal of charges are in dispute, the matter should ordinarily be submitted to a jury."); *Murphy*, 118 F.3d at 950 ("If…there is a question as to the nature of the circumstances leading to that termination, that question is one for the trier of fact."); *Chimurenga*, 45 F. Supp. 2d at 343 (denying summary judgment on triable issue of fact regarding the circumstances of the prosecution's voluntary dismissal of the indictment).

[11] Before *Lanning*, the Second Circuit had repeatedly held that "the merits of a claim for malicious prosecution under § 1983 are governed by state law." *Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (applying New York law); *see also Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (applying Connecticut law). "[U]ntil the early 2000s, New York courts adhered to these traditional common law principles relating to the favorable termination element of a claim of malicious prosecution," *Lanning*, 908 F.3d at 27, making the test identical under state or federal law. More recently, New York courts have articulated the test slightly differently, finding a termination favorable so long as it "is not inconsistent with innocence," and district courts have evaluated § 1983 malicious prosecution claims using that formulation. *See, e.g., Ying Li v. City of New York*, 246 F. Supp. 3d 578, 607-09 (E.D.N.Y. 2017); *Smalls v. City of New York*, 181 F. Supp. 3d 178, 188 (E.D.N.Y. 2016); *Bailey v. City of New York*, 79 F. Supp. 3d 424, 451 (E.D.N.Y. 2015); *Clark v. City of New York*, 09 CV 2533 (PKC), 2015 WL 5719612, *9-10 (E.D.N.Y. Sept. 29, 2015). Although *Lanning* clarified that the traditional common law phrasing applies to § 1983 claims, it did not decide whether there is *any* analytical difference between the two standards. *See Lanning*, 908 F.3d at 27 n.7.

the traditional common law.") (citation omitted).

Defendants assert without citation that prior court decisions rejecting Hincapie's claim of "actual innocence" foreclose his malicious prosecution claim, but that is not close to the test for favorable termination. Actual innocence claims in post-conviction proceedings require a convicted person to meet one of the highest bars in the law by proving that "in light of all the evidence it is more likely than not that *no reasonable juror* would have convicted him." *United States v. Thorn*, 659 F.3d 227, 234 (2d Cir. 2011) (emphasis added) (internal quotation marks omitted); *see also People v. Hamilton*, 115 A.D.3d 12, 27 (2d Dep't 2014) (requiring proof by "clear and convincing evidence" that the defendant is innocent). By contrast, the paradigmatic example of favorable termination, acquittal, does not establish innocence by any standard—only that the prosecution did not prove guilt beyond a reasonable doubt. *See, e.g.*, *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984) ("[A]n acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt.").

In a further prevarication, defendants claim that the dismissal of plaintiff's indictment, with the consent of prosecutors, is not a favorable outcome for malicious prosecution purposes. DE #103 at 8. But the black-letter law is exactly to the contrary: "the formal abandonment of the proceedings by the public prosecutor is a final termination in favor of the accused…for example, by a motion to dismiss the complaint." Restatement (Second) of Torts, § 659, cmt. e; *see also Murphy*, 118 F.3d at 948; *Lanning*, 908 F.3d at 27 n.6. Crucially, defendants have not cited a single example of a court dismissing a malicious prosecution claim in circumstances remotely like those here, where the prosecution *admitted* it would lose at trial. *Cf. Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995) (finding that a dismissal "with leave to re-present" entered after key witness recanted testimony was not indicative of innocence because, unlike here, substantial evidence still implicated Russell and "the state may yet reinstate the charges"); *Miller v. Cuccia*, 201 F.3d 431 (2d Cir. Nov. 18, 1999) (unpublished)

(holding termination not favorable because it was based on the wrongful admission of evidence of guilt); *Lanning*, 908 F.3d at 28 (holding plaintiff had not sufficiently pleaded favorable termination where his complaint failed to specify any basis for the dismissal and he conceded dismissal was based at least in part on lack of jurisdiction). Dismissal of Hincapie's indictment is a favorable termination for malicious prosecution purposes and defendants' motion to dismiss should be denied.

### B.    Hincapie's well-pleaded allegations rebut the presumption of probable cause.

Consistent with the letter Hincapie wrote to his criminal defense attorney on September 5, 1990, which the 440 court credited as a "demonstrabl[e] recantation," plaintiff plausibly alleges that the confession used against him (as the only evidence) was violently coerced by detectives who knew he was innocent. FAC at ¶¶ 86-108; 440 decision, Harvis Decl., Exhibit 2 at p. 41; Letter, annexed to the Harvis Decl. as Exhibit 4. This alone rebuts the presumption. *See Tankleff*, 2017 WL 2729084 at *21 ("If the confession was fabricated, that alone could be sufficient to rebut the presumption of probable cause."); *id.* ("If, as Plaintiff maintains, Plaintiff's statements were coerced and the prosecution was initiated based on a confession fabricated by Defendants, the factfinder could conclude that no reasonable officer would believe that there was probable cause to prosecute.") (collecting cases); *Celestin v. City of New York*, 581 F.Supp.2d 420, 432 (E.D.N.Y. 2008) (Glasser, J.) ("The police must not ignore exculpatory evidence that would void probable cause if taken into account."); *Scotto v. Almenas,* 143 F.3d 105, 113 (2d Cir. 1998) ("[I]t would be objectively unreasonable for [an officer] to believe he had probable cause to arrest [plaintiff] if [the officer] himself fabricated the grounds for arrest."); *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006) (noting that the presumption of probable cause arising from the indictment can be "rebutted by evidence of various wrongful acts on the part of police"); *Hicks v. Marchman*, 719 F. App'x 61, 65 (2d Cir. 2018) ("[U]nder New York law the presumption [of probable cause] can be rebutted by showing "that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or the

District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith[.]") (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82–83 (1983)); *Morel v. Reed*, 11 CV 1808, 12 CV 5145, 2015 WL 3755976, *4 (E.D.N.Y. June 16, 2015) ("When law enforcement officers fabricate evidence...the presumption of probable cause created by the indictment [is] overcome...."); *see also, e.g., Kinzer v. Jackson*, 316 F.3d 139, 143-44 (2d Cir. 2003) (noting that probable cause can be "nullified by information establishing [a defendant's] innocence" and that a malicious prosecution claim "can rest on a prosecution that is continued notwithstanding the discovery of information that exculpates the defendant"); *Torres v. Jones*, 47 N.E.3d 747, 747 (2016) ("[T]he police's transmission of...fabricated evidence can overcome the presumption of probable cause arising from a grand jury's indictment of the plaintiff.").

Indeed, disclosure of the officers' misconduct in coercing the false confession would not have merely exculpated Hincapie—it "would have had a seismic impact" at trial. *Leka v. Portuondo*, 257 F.3d 89, 106-107 (2d Cir. 2001) (reversing a denial of habeas based on testimony contradicting two eyewitness identifications, the only evidence of guilt); *see Smith v. Cain*, 565 U.S. 73, 76 (2012) (holding that where eyewitness identification "was the *only* evidence" linking defendant to the crime, undisclosed impeachment evidence was "plainly material"); *Boyette v. Lefevre*, 246 F.3d 76, 92 (2d Cir. 2001) (reversing a denial of habeas and holding that impeachment material of sole eyewitness "seriously undermines confidence in the outcome at trial") (internal quotation marks omitted); *Brandon v. City of New York*, 705 F.Supp.2d 261, 276 (S.D.N.Y. 2010) (noting that the Second Circuit has permitted "claims for both malicious prosecution and a denial of [the] right to [a fair] trial based on the same alleged fabrication of evidence") (citing *Ricciuti*, 124 F.3d at 130-31); *White v. Frank*, 855 F.2d 956, 961-62 (2d Cir. 1988) (noting that the "presumption [of probable cause] may be rebutted by proof that the defendant misrepresented, withheld, or falsified evidence."); *DaCosta v. Tranchina*, 281 F. Supp. 3d 291 (E.D.N.Y. 2017), *reconsideration denied*, 285 F. Supp. 3d 566

(E.D.N.Y. 2018) ("[W]hen evidence of known dubious value— [such as] a potentially falsified confession…is presented to the grand jury, and the grand jury is not apprised of its limited probative value, the presumption of probable cause created by the indictment is rebutted."); *Chimurenga*, 45 F. Supp. 2d at 343 (noting the existence of a "triable dispute as to whether genuine probable cause existed or whether the individual defendants manufactured it falsely"); *Boyd v. City of New York*, 336 F.3d 72, 75-77 (2d Cir. 2003) (discussing elevated standard for probable cause in malicious prosecution context); *see also Gannon v. City of New York*, 917 F. Supp. 2d 241, 245 (S.D.N.Y. 2013) ("The Second Circuit clearly distinguished the probable cause necessary to defeat a false arrest claim from that required to defeat a malicious prosecution claim[.]").

Here, defendants knew Hincapie was innocent because (i) he credibly denied involvement, (ii) nothing linked him to the crime, (iii) Ricardo Lopez had exculpated him, (iv) Pascual Carpenter had already confessed to Hincapie's supposed role (which plaintiff's skin color made him ineligible for in any event), (v) defendants themselves had corruptly caused Hincapie's name to be inserted into the list of suspects and defendants had (vi) coerced the false confession using physical violence. FAC, ¶¶ 47-116; *see Wu v. City of New York*, 934 F. Supp. 581, 587 (S.D.N.Y. 1996) ("Second Circuit case law stresses the importance of investigation and corroboration."). As Your Honor explained in *Jovanovic*, "the failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause." 2006 WL 2411541, *7 (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)); *see Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2006).

Given these facts – which must be accepted as true for purposes of this motion, and which defendants' memorandum has completely failed to address – the presumption of probable cause created by the indictment is undoubtedly rebutted and defendants' motion should be denied:

> While a grand jury indictment does create a presumption of probable
> cause, it is rebuttable by evidence that the indictment was the product
> of fraud, perjury, the suppression of evidence by the police or other

> police conduct undertaken in bad faith. That is what Jovanovic alleges:
> Bonilla fabricated evidence, destroyed evidence favorable to the
> defense, and offered false testimony to the grand jury. Taking these
> allegations as true, the indictment was undoubtedly the product of
> fraud, perjury, and the suppression of evidence. Thus, Plaintiff
> sufficiently rebuts any presumption of probable cause for purposes of
> the current motion.

*Jovanovic*, 2006 WL 2411541 at *8 (internal citations and quotation marks omitted).[12]

## III.   Hincapie's *Brady* claim is well-pleaded.

Defendants do not contest that the Lopez and Vasquez statements, properly characterized, are *Brady* material. Instead, they attack a *Brady* argument Hincapie never made. Defendants misstate plaintiff's *Brady* claim as relating to "Ricardo Lopez's existence," which, they argue, was "adequately disclosed." DE #103, p. 12. Not at all—plaintiff's claim involves the exculpatory statements defendants heard from Ricardo Lopez but never wrote down or communicated to the prosecutor, and the exculpatory information provided by Tannisha Vasquez, which they suppressed. FAC at ¶¶ 55, 112. The rest of defendants' argument—concerning evidentiary rulings—is completely irrelevant.

### A.   The withheld exculpatory statements of Ricardo Lopez are *Brady*.

A *Brady* claim has three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Poventud*, 750 F.3d at 133) (citing *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004)). "Police officers can be held liable for *Brady*…violations under § 1983 if they withhold exculpatory evidence from prosecutors." *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015) (citing *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992)). When evaluating the materiality of undisclosed exculpatory

---

[12] Defendants' sole argument on this point, that plaintiff offers legally-insufficient "conjecture," is frivolous on this record. *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) ("[A] § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact.") (collecting cases).

evidence, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

In his amended complaint, Hincapie identifies *exculpatory* statements by co-defendant Ricardo Lopez that were never disclosed and, indeed, affirmatively hidden. FAC at ¶¶ 79-82, 150-51. Lopez's statements that "Johnny left" go to the heart of plaintiff's innocence claim and undermine the validity of inculpatory statements defendants falsely attributed to plaintiff and his co-defendants. Hincapie has pleaded that such statements were deliberately *suppressed*: Defendants did not document the statements and prevented their disclosure to the defense and prosecution. *Id.* In other words, defendants deliberately failed to make any record whatsoever of these exculpatory statements in order to preserve a flimsy case relying completely on the false confession. Nor is there any doubt that this evidence was *material*: Lopez's exculpatory statements rebut the false confession that was the *only* evidence of guilt against Hincapie. As alleged, Lopez's suppressed statements during the unrecorded interrogation bolstered and corroborated Lopez's exculpatory statements captured on the videotape. FAC at ¶¶ 79-82; *Boyette*, 246 F.3d at 92 (statements during police interview material under *Brady*).

### B.    Defendants also suppressed Tannisha Vasquez's exculpatory account.

Hincapie's *Brady* claim should survive based on Ricardo Lopez's undisclosed statements alone, but defendants also ignored a second basis for the claim. Hincapie pleaded that defendants withheld the account of Tannisha Vasquez, who was with Hincapie and Luis Montero on the turnstile level of the station during the robbery – information DANY later used to exonerate Montero; but Hincapie and his lawyers never learned of Vasquez. *See* FAC at ¶¶ 148-49; *see also* Montero Dismissal Recommendation, annexed to Harvis Decl. as Exhibit 3 (incorporated by referenced at FAC ¶¶ 148-49). Because disclosure of Vasquez's account could have proven Hincapie's innocence, it was material under *Brady*. *See, e.g.*, *Bermudez*, 790 F.3d at 376 n.4; *Boyette*, 246 F.3d at 92.

IV.    **Plaintiff's § 1983 coercion claim survives.**

"A plaintiff may bring a Section 1983 coercion claim if coercion was applied to obtain a waiver of the plaintiff's rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiff in a criminal proceeding." *Tankleff*, 2017 WL 2729084 at *16 (quotation omitted). This test is clearly met on the instant facts as alleged, and the claim should survive. FAC at ¶¶ 20-27, 48-108 (presenting facts supporting coercion claim); *Tankleff*, 2017 WL 2729084 at *16 ("The assessment of voluntariness is a fact-intensive inquiry during which the court should consider the accused's characteristics, the conditions of the interrogation, and the conduct of law enforcement officials….When a confession is obtained under circumstances that overbear the defendant's will at the time it is given, it is not voluntary.") (collecting cases).

Defendants' argument is that plaintiff's coercion claim is "subsumed" and thus subject to dismissal. But this argument fails: the only case defendants cite, *Zahrey v. City of New York*, did not involve a false confession or a § 1983 coercion claim; instead, unlike the instant matter, that decision concerned a "generalized substantive due process claim," which plaintiff here does not assert. 98 CV 4546 (DCP) (JCF), 2009 WL 1024261, *7 (S.D.N.Y. Apr. 15, 2009); *see* FAC, *generally*.

V.    **The emotional distress claims survive.**

If it should please the Court, defendants' arguments on this point fail outright. Plaintiff's emotional distress arose from his over quarter-century of wrongful confinement and the prosecution itself, which terminated on January 25, 2017. FAC ¶¶ 220-22. Plaintiff filed his notice of claim within 90 days of that date, and the state law claims are thus timely. *Supra* at I(B). Indeed, plaintiff respectfully submits that the Court should consider the analysis of the Hon. Shira A. Scheindlin in another wrongful conviction action, *Newton v. City of New York*, 566 F. Supp. 2d 256, 281 (S.D.N.Y. 2008):

> Defendants assert that the alleged conduct does not rise to the level of intentional infliction of emotional distress. Defendants are simply wrong. Plaintiff alleges that the Officer Defendants…maliciously

> falsified evidence that caused him to spend twenty-two years in prison
> for a crime he did not commit. There is no question that such conduct
> is so outrageous in character, and so extreme in degree, as to go beyond
> all possible bounds of decency, and to be regarded as atrocious, and
> utterly intolerable in a civilized community. (quotation marks and
> citation omitted).

## VI.  Plaintiff plausibly alleges *Monell* liability.

"To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy*, 914 F.3d at 756 (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). Plaintiff plausibly alleges that a municipal policy – conducting custodial interrogations without recording them – proximately caused his wrongful conviction. FAC, ¶¶ 55, 57, 60, 68, 78, 92, 100, 167-79, 213-16. It is indeed more than plausible, crediting plaintiff's facts as required, that a recording of plaintiff's interrogation would have revealed his innocence and defendants' coercion, preventing the resulting damages. Such detailed, plausible allegations are sufficient at the pleading stage to survive a Rule 12 challenge.

## VII.  Defendants' personal involvement and supervisory liability arguments fail.

Where, as here, issues of personal involvement are unresolved when a dismissal motion is made, the Second Circuit has held that "dismissal is premature" and that "the opportunity to identify those involved [should be] accorded." *Davis v. Kelly*, 160 F.3d 917, 921-22 (2d Cir. 1998); *see Covington v. Warden of C-95*, 93 CV 1958, 1996 WL 75211, *4 (E.D.N.Y. Feb. 8, 1996) ("[C]ourts have recognized that situations arise in which the identity of alleged defendants may not be known prior to the filing of a complaint. In such situations, the plaintiff should have an opportunity to pursue discovery to identify the unknown defendants.") (quotation omitted); *see Satchell v. Dilworth,* 745 F.2d 781, 786 (2d Cir. 1984) ("Plaintiff should have a reasonable opportunity, through discovery, to ascertain what individuals...caused [the alleged violation].");  *Maclin v. Paulson,* 627 F.2d 83, 87 (7th Cir. 1980) ("[P]laintiff should have been permitted to obtain...identity [of unidentified officers]

through limited discovery."); *Maggette v. Dalsheim,* 709 F.2d 800, 803 (2d Cir. 1983) (endorsing *Maclin*); *see also Oliveri v. Thompson,* 803 F.2d 1265, 1279 (2d Cir. 1986) (pointing out advantage, in suits against governmental entities and supervisors, of permitting early discovery to identify responsible subordinate officials); *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (holding that potential factual issues as to personal involvement could not be resolved without development of a factual record and that dismissal without an opportunity for additional discovery would be premature) (citing *Davis,* 160 F.3d at 922); *Jean-Laurent v. Lawrence,* 12 CV 1502 (JPO), 2014 WL 1282309, *3 (S.D.N.Y. Mar. 28, 2014) ("[T]he question at [the 12(b)(6) stage] is whether [plaintiff] has plausibly alleged [defendant's] personal involvement, not whether he made detailed allegations in support of each element of his claim. Reasonable inferences are permissible to bridge the gaps in a plaintiff's allegations. The purpose of discovery is to fill in those gaps.") (citing *Grullon,* 720 F.3d at 141); *Williams v. Koenigsmann,* 03 CV 5267 (SAS), 2004 WL 315279, *5 (S.D.N.Y. Feb. 18, 2004) ("The personal involvement of [the defendants], or lack thereof, is a matter to be explored in discovery. It would be premature to conclude that these defendants were not personally involved in the alleged constitutional violations based solely on a review of the pleadings.").

In their motion, defendants concede that plaintiff has adequately pleaded the personal involvement of defendants Ali, Casey, Gonzalez, Christie, Swenson, Rosario, Rizzo and Santoro as to some or all of his claims, including for supervisory liability. DE #103 at Points I(D), II(D), VI. Defendants, however, cherry-pick the FAC to argue that plaintiff's allegations are insufficient as to certain defendants on certain claims. *Id.* But defendants' motion is premature and unpersuasive.

### A.    Plausible allegations in the FAC support supervisory liability.

Defendants do not dispute that supervisors may be held liable under § 1983, they challenge the sufficiency of the factual allegations. Given the plausible allegations that the individual defendants, *inter alia,* coerced Hincapie's false confession and covered it up, the lone question is whether the

complaint plausibly pleads the personal involvement of individual supervisory defendants Bayshim, Borman, Demartino, Connolly, Herbst and Mole in this misconduct. A plaintiff may establish such personal involvement by making any one of five showings (the "*Colon* factors"), which include "direct participation," "gross negligence" and "deliberate indifference." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

The FAC alleges, with abundant support, that supervisors (including unidentified individuals) were maintaining granular oversight of this high-profile, high-pressure and politically-sensitive murder investigation. FAC at ¶¶ 48, 58. Sufficient allegations of direct misconduct are alleged against supervisors Connolly and Borman. *See* FAC at ¶ 68 (Borman, with Rosario, conducts unconstitutional custodial interrogation of Nova), ¶ 81 (Connolly approves fabricated Lopez DD5 prepared by Swenson). The FAC further establishes that Bayshim, Herbst, Demartino and Mole were closely supervising the scene at Midtown North and – while they may or may not have been personally present during the interrogations (at this pre-discovery stage, plaintiff cannot say for sure), they were plausibly involved in permitting investigatory misconduct by their subordinates. FAC at ¶ 58.

It is plausible that defendants Bayshim, Herbst, Demartino and Mole approved or ordered defendants' coercive interrogations and evidence fabrication.[13] Of course, it is also *possible* that defendants lied to the supervisors regarding certain critical details. Should discovery reveal that any supervisor was not personally involved, Hincapie will voluntarily dismiss any claims against him. But given that the particular facts of each individual defendant's involvement are solely within defendants' control, Hincapie is not required to provide specifics he could not possibly obtain before discovery. *See Arista*, 604 F.3d at 120. At this stage, it is enough to allege facts sufficient to support the plausible inference that the supervisors personally encouraged defendants' misconduct, or, despite knowing

---

[13] It is indeed *implausible* that a case so high profile, with direct interest and involvement from the mayor, district attorney and two police commissioners would not have been closely supervised up the chain of command. *See* FAC at ¶ 48.

about that misconduct, and given the opportunity, did not correct subordinate behavior.

### B. The remaining personal involvement arguments are premature and meritless.

At this stage, plaintiff's well-pleaded allegations support his malicious prosecution and fair trial claims against defendants Borman, Swenson, Rizzo, Rosario, Santoro and Connolly. *See* FAC, ¶¶ 68, 71, 77, 80-81, 92, 156. Further details of their participation will come out in discovery, but Hincapie's complaint pleaded that each was directly involved in framing Hincapie for the Watkins murder in a manner that will, if proven, establish liability on the challenged claims. These specific, detailed allegations far exceed the "threadbare recitals" and "unadorned, the-defendant-unlawfully-harmed-me accusation" condemned in *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). *See Phillips v. City of New York*, 871 F. Supp. 2d 200, 204 (E.D.N.Y. 2012) (refusing to dismiss a malicious prosecution claim shortly before trial, based on lack of personal involvement, where there was evidence that the officer personally participated in the events leading to the plaintiff's allegedly false arrest).

## VIII. Equitable tolling should be applied to Hincapie's false arrest and imprisonment claims.

Defendants offer no merits argument against plaintiff's false arrest claim, conceding it is well-pleaded. Instead, defendants argue timeliness, citing *Wallace*. DE #103 at Point IV. As discussed *supra* at Point I(A), the Court in *Wallace* clarified the accrual date for § 1983 *false arrest* claims, overturning the longstanding rule that a § 1983 false arrest claim could not be brought until a conviction was overturned and holding the false arrest claim to have accrued at the time of detention by legal process. 549 U.S. at 397. *Wallace* applied retroactively, *Mallard v. Potenza*, 376 F. App'x 132, 133 (2d Cir. 2010) – leaving litigants previously barred by *Heck* now foreclosed without tolling.

*Wallace* recognized the difficulty this posed for litigants. Accordingly, the *Wallace* Court suggested that courts allow litigants to bring claims that would otherwise have been barred by the statute of limitations post-*Wallace*. More specifically, the Court recognized the risk that a combination of the *Heck* bar and an expired statute of limitations could result in the complete bar of meritorious §

1983 claims. This would have been unfair. Consider: a litigant would have been barred by *Heck* from bringing his false arrest claim but, once his conviction was invalidated, he would have been unable to bring his claim because the statute of limitations had run. The *Wallace* Court recognized the fundamental unfairness of this situation. 549 U.S. at 395 n.4 (describing the outcome as "a result surely not intended").

The *Wallace* Court left it up to lower courts to decide "how much time [the plaintiff] would have…to refile the suit once the *Heck* bar was removed." *Id*. After *Wallace*, courts in this circuit and throughout the country responded by applying equitable tolling principles to avoid the unintended result of precluding certain plaintiffs from ever bringing claims. *See Wharton v. Cty. of Nassau*, 07 CV 2137 (RRM) (ETB), 2010 WL 3749077, *4 (E.D.N.Y. Sept. 20, 2010) (holding that plaintiffs' claims were subject to equitable tolling because the "[p]laintiffs, through no fault of their own, relied on then-authoritative Second Circuit precedent to their detriment, and strict application of *Wallace* would effectively deprive Plaintiffs of their cause of action"); *Hargroves v. City of New* York, 694 F. Supp. 2d 198, 214 (E.D.N.Y. 2010), *rev'd on other grounds*, 411 F. App' x 378 (2d Cir. 2011) (finding that equitable tolling was appropriate); *see also Ellis v. City of Chi.*, 13 CV 2382, 2016 U.S. Dist. LEXIS 5817, *17 (N.D. Ill. Jan. 19, 2016) (same); *Coleman v. Rice*, 14 CV 1469, 2015 U.S. Dist. LEXIS 9532, *13 (N.D.N.Y. Jan. 28, 2015) ("The Supreme Court has suggested that should Plaintiff's conviction be reversed after the statute of limitations has run on his false arrest claims, Plaintiff should be permitted to file his false arrest claims notwithstanding the time bar."); *In re Jones*, 670 F.3d 265, 268 (D.C. Cir. 2012) (recognizing that *Wallace* "implied that, even if [a litigant's] claims had accrued before the district court dismissed them under *Heck*, the statutes of limitations should be tolled as long as the bar of *Heck* prevented [the litigant's] suit from going forward").

Equitable tolling is meant to counteract extraordinary circumstances leading to a "sever[e] . . . obstacle" to "compliance with a statute of limitations." *See Watson*, 865 F.3d at 132 (2d Cir. 2017).

In this case, Hincapie confronted the ultimate obstacle – a complete bar for over two decades. Hincapie promptly filed his claim when the bar was lifted. Equitable tolling is appropriate in this instance to avoid a "particular[] injustice." *Holland v. Florida*, 560 U.S. 631, 650 (2010) ("In emphasizing the need for flexibility, for avoiding mechanical rules, we have followed a tradition in which courts of equity have sought to relieve hardships which…if strictly applied, threaten the evils of archaic rigidity[.]") (quotations omitted); *see Wharton*, 2010 U.S. Dist. LEXIS 99174 at *12; *Hargroves*, 694 F. Supp. 2d at 212. Given New York's three-year statute of limitations, *McDonough*, 898 F.3d at 265 (citation omitted), and the decades it often takes to gain exoneration, it is likely impossible to ever bring a claim. Accordingly, dismissal of plaintiff's well-pleaded false arrest and imprisonment claims is a result "surely not intended" by the Supreme Court, *Wallace*, 549 U.S. at 395 n.4. Equitable tolling should apply.[14]

## IX.   Hincapie's failure to intervene claims survive.

Incredibly, defendants take the position that Hincapie's failure to intervene claim should be dismissed because "there was no constitutional violation" or any "realistic opportunity to intervene." DE #103 at p. 21. Such argument is frivolous and contradicted by plaintiff's well-pleaded allegations, permissibly pled in the alternative on failure to intervene grounds. *See, e.g.*, *Guerrero v. City of New York*, 16 CV 516 (JPO), 2017 WL 2271467, *4 (S.D.N.Y. May 23, 2017) ("Though a failure to intervene theory of liability is inapplicable where a defendant is a direct participant in the alleged primary violation, at this stage, these two claims may be pleaded in the alternative."); *Pereyra v. Eaddy*, 13 CV 4760 (PAC) (MHD), 2015 WL 3953606, *8 (S.D.N.Y. June 29, 2015) (Crotty, J.) ("Generally, the question of whether intervention was feasible is one for the jury.") (citations omitted).

---

[14] The *Wallace* Court suggested that courts could also look to "state law for tolling rules." 549 U.S. at 394. New York state law codifies several tolling provisions, including when "the commencement of an action has been stayed by a court…the stay is not a part of the time within which the action must be commenced." N.Y.C.P.L.R. § 204 (2018).

<u>CONCLUSION</u>

For the foregoing reasons, plaintiff respectfully requests that this Honorable Court deny defendants' motion to dismiss in its entirety and grant such other and further relief as the Court deems just and proper.

Dated:   New York, New York
             June 17, 2019

ELEFTERAKIS, ELEFTERAKIS & PANEK

_____
Gabriel P. Harvis
Baree N. Fett
80 Pine Street, 38th Floor
New York, New York 10007
(212) 532-1116

*Attorneys for plaintiff*