UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

JOHNNY HINCAPIE,

               *Plaintiff,*

      -*against*-

CITY OF NEW YORK; Detective CARLOS
GONZALEZ; Detective DONALD CASEY;
Detective JAMES CHRISTIE; Detective
ARTHUR SWENSON; Detective JOSE
RAMON ROSARIO; Detective DANIEL
RIZZO; Detective MATTHEW SANTORO;
Sergeant SHARIF ALI; Sergeant JOHN
HERBST; Sergeant TIMOTHY CONNOLLY;
Sergeant GARY BORMAN; The Estate of
Deputy Chief JOSEPH DEMARTINO;
Lieutenant VICTOR MOLE; Captain "JOHN"
BAYSHIM; JOHN and JANE DOE
DETECTIVES 1-5; and JOHN and JANE
DOE SUPERVISORS 1-5,

               *Defendants.*

---------------------------------------------------------------X

18 Civ. 3432 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff Johnny Hincapie seeks damages from the City of New York (the "City") and

several New York City Police Officers for his alleged wrongful conviction and imprisonment for

the 1990 felony murder of "Utah tourist" Brian Watkins. In 2015, after twenty-five years in

prison, a New York state court vacated Plaintiff's conviction and the New York District Attorney

("DA's Office") dismissed the indictment. Plaintiff then filed this § 1983 action against the City

and NYPD officers, alleging eight claims including (1) malicious prosecution, (2) fabrication of

evidence, (3) coercion, (4) supervisory liability as to certain NYPD defendants, (5) a *Monell*

claim for failure to record interrogations; (6) false arrest and imprisonment, (7) intentional and negligent infliction of emotional distress, and (8) failure to intervene.

Defendants move to dismiss the First Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 101.) For the reasons that follow, Defendants' motion to dismiss is DENIED in part and GRANTED in part.

## BACKGROUND[1]

On the evening of September 2, 1990, Johnny Hincapie was a part of a large group of teens who took the subway from Queens to the Roseland Ballroom in Manhattan for a birthday party. (Compl. ¶ 35.) The Watkins family, tourists from Utah, were in New York for the US Tennis Open. (*Id.* ¶ 38.) They happened to be on the subway, heading on a family dinner in Greenwich Village. (*Id.*) They never made it; they were assaulted by a group of young people. (*Id.* ¶¶ 39-41.) Brian Watkins acted to protect his parents and was fatally stabbed in the chest by one of the muggers on the subway platform. (*Id.* ¶¶ 34, 40.) Plaintiff Johnny Hincapie claims that he was not involved in the crime. (*Id.* ¶ 46.) Plaintiff was upstairs on the subway station's turnstile level with two girls and Luis Montero when the crime occurred, unaware of what was happening on the platform below. (*Id.* ¶ 47.) Plaintiff was, however, arrested and charged with participating in the crime.

In 1990, murders peaked in New York City, at 2,245 homicides; many occurred on the subway. (*Id.* ¶¶ 28-29.) The Watkins murder was high-profile and a threat to tourism, such that there was unusual pressure to deliver immediate results. (*Id.* ¶ 48.) At least eleven NYPD officers, Defendant Detectives Carlos Gonzalez, Donald Casey, James Christie, Arthur Swenson,

---

[1] The facts are taken from the First Amended Complaint and documents incorporated by reference and are accepted as true for the purpose of Defendants' motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Jose Ramon Rosario, Daniel Rizzo, Matthew Santoro, and Sergeants Sharif Ali, Timothy Connolly, and Gary Borman investigated the Watkins murder. (*See e.g.*, Compl. ¶ 187.) Hincapie alleges that the case against him rested on fabricated evidence and a coerced confession. (*Id.* ¶¶ 108-11.)

The first two suspects, Anthony Anderson and Luis Montero, were arrested based on eyewitness statements. (*Id.* ¶ 52.) At the Precinct, Anderson admitted to involvement in the crime and provided a statement naming accomplices, but did not mention Plaintiff. (*Id.* ¶ 54.) Defendants Gonzalez and Casey interrogated Anderson; the interrogation was not recorded. (*Id.* ¶ 55.) Over the course of several hours and four separate interrogation sessions—one of which took place in the precinct's locker room—suspect Luis Montero was beaten and interrogated by Gonzalez and Casey but refused to falsely confess. (*Id.* ¶ 56.)

Within hours of the crime, the next two suspects Ricardo Nova and Pascual Carpenter were taken into custody—neither were given *Miranda* warnings, but each was interrogated leading to statements that for the first time included "Johnny" as a member of the group traveling to the Roseland Ballroom. (*Id.* ¶ 59.) Defendants Rosario and Borman, who initially interrogated Nova, admitted at trial that Nova was not given *Miranda* warnings for the first several hours of interrogation, and his interrogation was not recorded. (*Id.* ¶ 68.) The statement attributed to Nova—written by Defendant Detective Rosario—listed eleven participants in the robbery, six more than had been reported by the victims. (*Id.* ¶¶ 69-70.) Gonzalez and Casey interrogated Carpenter; the interrogation was not recorded. (*Id.* ¶ 60.) When the interrogation was finished and a statement worked out, Carpenter then made a videotaped confession to the District Attorney. (*Id.* ¶ 63.) Carpenter's confession did not mention Plaintiff. (*Id.*) Indeed, Carpenter repeatedly indicated to the District Attorney that the information in his statement had

been supplied by Gonzalez and Casey. (*Id.* ¶ 64.) Since Carpenter's release from prison, he has described Gonzalez and Casey as coercing him into adopting the detectives' narrative in his written statement and instructing him to list Hincapie as present, even though Carpenter had no such knowledge. (*Id.* ¶ 65.)

By midday on September 3, 1990, three additional suspects were detained: Gary Morales, Emiliano Fernandez, and Ricardo Lopez. (*Id.* ¶ 74.) Morales made no mention of Plaintiff Johnny Hincapie. (*Id.* ¶ 76.) Defendants Detectives Rizzo, Santoro, and Christie made Fernandez go back after his statement had been drafted and insert the name "Johnny." (*Id.* ¶ 77.) Lopez's statement prepared in the presence of Defendant Swenson also makes no mention of Johnny Hincapie. (*Id.* ¶ 80.) Nevertheless, the police report prepared by Swenson and approved by Connelly states that Lopez told investigators that seven others "including Johnny" stayed behind to participate in the crime. (*Id.* ¶ 81.) Lopez's videotaped statement to the DA's office, makes clear that the evidence was fabricated, as he stated several times that "Johnny left" before the crime and that there were six people present. (*Id.* ¶ 82.)

Plaintiff Johnny Hincapie, barely 18 years old with no prior police encounters, was the last suspect arrested. (*Id.* ¶ 82.) Casey, Gonzalez, Christie, and Ali interrogated Plaintiff for several hours, without *Miranda* warnings, threatened and inflicted bodily harm and forced him to falsely confess to participating in the crime. (*Id.* ¶¶ 94-96.) Like the other interrogations, this one was not recorded either. (*Id.* ¶ 100.) Defendants forced Plaintiff to adopt a role in the crime of pushing Karen Watkins, the same act attributed to an African-American perpetrator, purportedly claimed hours earlier by Carpenter. (*Id.* ¶ 99.) Detective Christie wrote out Plaintiff's purported statement. (*Id.* ¶ 98.) In the videotaped statement to the DA's office, Plaintiff appears to be in a trance-like state, missing patches of hair from the violent

4

interrogation, providing inconsistent and confused answers to questions drawn from the false statement. (*Id.* ¶¶ 101-05.)

No one ever positively identified Plaintiff as taking part in either the Watkins robbery or murder, either before or at trial. (*Id.* ¶ 109.) In addition to failing to identify Plaintiff as a participant in the crime, the six eyewitnesses offered by the State at trial cumulatively misidentified 27 fillers during line-up procedures. (*Id.* ¶ 110.) No physical evidence tying Plaintiff to the crime ever existed. (*Id.* ¶ 107.) The only evidence presented at trial against Plaintiff was his false confession and a single witness's equivocal pre-trial statement that Plaintiff looked "vaguely familiar." (*Id.* ¶ 111.) Hincapie was convicted and sentenced to twenty-five years to life. (*Id.* ¶ 115.)

In November 2013, Plaintiff filed a C.P.L. § 440.10 motion asserting actual innocence and newly-discovered evidence. (*Id.* ¶ 117.) Multiple witnesses with direct knowledge testified under oath to Plaintiff's innocence at the 440 hearing, none of whom had testified at his trial. (*Id.* ¶ 118.) One particular witness, Mariluz Santana who knew Plaintiff from her neighborhood testified that she observed the entire Watkins robbery. (*Id.* ¶ 121.) She testified as to Plaintiff's innocence and swore he was not present. (*Id.* ¶¶ 122-23.) Santana had not come forward earlier on her mother's advice, but was unaware that Plaintiff spent the ensuing decades in jail. (*Id.*) On October 6, 2015, a New York state court found that the newly discovered evidence was "of such a character to create a probability that had such evidence been received at trial the verdict would have been more favorable" to Hincapie and vacated his conviction. (*See* Akina Dec. Exhibit B, Dkt.102-2.) The DA's office elected not to retry the case and dismissed the indictment against Plaintiff on January 25, 2017. (*See* Akina Dec. Exhibit D, Recommendation for Dismissal, Dkt. 102-4.)

As a result of his prosecution and twenty-five years of incarceration, Plaintiff has suffered severe emotional and mental anguish. (*Id.* ¶ 180.) Plaintiff fears police encounters and his daily activities are limited because of the trauma he suffered. (*Id.*) Plaintiff was denied decades of gainful employment and his ability to support himself has been permanently impacted. (*Id.* ¶ 182.) Additionally, Plaintiff and his family incurred substantial legal fees during the decades he spent seeking to defend himself and prove his innocence. (*Id.* ¶ 184.)

Plaintiff initiated this action on April 19, 2018.[2] He alleges several constitutional violations, including malicious prosecution, denial of a right to a fair trial, coercion, and false arrest. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) claiming, *inter alia*, that the termination of Plaintiff's action does not constitute a favorable termination and that Plaintiff failed to adequately plead his claims. (Dkt. 101.)

## DISCUSSION

### I.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When considering a motion to dismiss pursuant to the Federal Rule of Civil Procedure 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," and construe the complaint in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). "[A] court at this stage of our proceeding is not engaged in

---

[2] Plaintiff filed the First Amended Complaint on May 6, 2019, Dkt. 97.

an effort to determine the true facts [or weigh evidence]. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016). Moreover, the plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims ... as it has, regardless of consistency."); *Gregory v. Daly*, 243 F.3d 687, 701 n. 12 (2d Cir. 2001). On a 12(b)(6) motion, a court may consider documents that are attached as exhibits, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken. *See Chambers*, 282 F.3d at 153.

## II.    Analysis

### A. City Defendants' Request to Dismiss Individual Officers

The City Defendants urge dismissal for certain Officer Defendants because Plaintiff has failed to allege any personal involvement.

An individual defendant is not liable under § 1983 absent personal involvement. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). With respect to the City of New York and Officers Ali, Gonzalez, Casey, Christie, Connolly, Swenson, Borman, Rosario, Rizzo, Santoro, the Complaint sufficiently alleges their personal involvement in conduct giving rise to Plaintiff's claims as discussed *infra*. (*See* Compl. ¶¶ 95, 187, 190, 195, 202 (alleging Casey, Gonzalez, Christie, and Ali coerced Hincapie's confession); ¶¶ 80-83, 195 (alleging Swenson and Connolly fabricated evidence inculpating Hincapie in connection with Lopez's statement); ¶¶ 77, 187, 189 (alleging Rizzo, Santoro, Christie fabricated evidence inculpating Hincapie in connection with Fernandez's statement); ¶¶ 86, 69, 187, 189, 195 (alleging Rosario and Borman fabricated evidence inculpating Hincapie in connection with Nova's statement).

The Complaint, however, fails to allege facts suggesting Bayshim, Herbst, Demartino, and Mole were involved in Plaintiff's criminal proceeding beyond their responsibility for supervising the officers inside the Midtown North Precinct on September 3 and 4, 1990. Accordingly, Defendants' motion to dismiss is granted as to Bayshim, Herbst, Demartino, and Mole.

### B. Malicious Prosecution Under Federal & State Law (Claim 1)

Defendants initially urged the Court to dismiss Plaintiff's claim as time-barred. On reply, Defendants concede that after the Supreme Court's decision in *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019), the malicious prosecution and fabrication of evidence claims are not time-barred. The statute of limitations for a fabricated-evidence claim does not begin to run until the criminal proceedings against the defendant have terminated in his favor. Defendants next argue that Hincapie's claims fail as a matter of law because he cannot demonstrate a favorable termination and cannot rebut the presumption of probable cause.

To state a claim for malicious prosecution, Plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019). Plaintiff adequately pleads a claim of malicious prosecution.

#### 1. Favorable Termination

Hincapie adequately pleads favorable termination. Contrary to Defendant's suggestion, neither an acquittal nor a finding of actual innocence by clear and convincing evidence is necessary. Citing *Lanning v. City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018), Defendants argue that the dismissal and vacatur of Hincapie's conviction did not "affirmatively indicate his

innocence." Defendants' argument misinterprets *Lanning* and the Complaint. The Second Circuit in *Lanning* "reaffirmed the longtime requirement that favorable termination under federal law requires that 'the prosecution terminated in some manner indicating that the person was not guilty of the offense charged,' based on the 'merits' rather than 'on any number of procedural or jurisdictional grounds.' " *Rosario v. City of New York*, No. 18 CIV. 4023 (LGS), 2019 WL 4450685, at *4 (S.D.N.Y. Sept. 16, 2019) (citing *Lanning*, 908 F. 3d at 29). "No single type of disposition is necessary or sufficient, but the termination must be 'measured in objective terms by examining the totality of the circumstances.' " *Id.* In *Lanning*, the Second Circuit held that plaintiff's "vague allegations" were insufficient to plead favorable termination where he alleged that "the charges were dismissed at some point after a jury trial, without specifying how or on what grounds;" plaintiff conceded the dismissals were in part based on jurisdiction arising out of where his estranged wife was physically located; and the state court explicitly stated there was no "determination of the merits." *Lanning*, 908 F.3d at 28.

By contrast, here, the Complaint alleges that Plaintiff's conviction was vacated, and his indictment was dismissed after he was imprisoned for twenty-five years, following a reinvestigation of the charge and newly discovered exculpatory evidence. In vacating the conviction, the state court determined on the merits that Hincapie had met his burden of establishing, by a preponderance of the evidence, that the newly discovered exculpatory and material evidence would have produced a more favorable verdict at trial. (*See* Harris Dec. Exhibit 2, Dkt. 108-2.) Plaintiff's Certificate of Disposition ("COD") constitutes presumptive evidence of a favorable termination. *See United States v. Green*, 480 F.3d 627, 632 (2d Cir. 2007). The COD states: "The above-mentioned dismissal is a termination of the criminal action *in favor of the accused*" and "the accused shall be restored, in contemplation of the law, to the

status occupied before the arrest and prosecution." (Harvis Dec. Exhibit 1, COD at 1, Dkt. 108-1.) The status occupied before Plaintiff's arrest and prosecution is innocence. *See e.g., Johnson v. Mississippi*, 486 U.S. 578, 585 (1988) (After a "conviction has been reversed, unless and until [the defendant] should be retried, he must be presumed innocent of that charge.")

Further, the totality of circumstances surrounding the dismissal indicate innocence. Significantly, the DA's Office decided not to retry Hincapie because it did not believe it could prove the case.[3] *See Rosario*, 2019 WL 4450685, at *4 (holding the Plaintiff adequately pled favorable termination where the prosecutors did not believe they could prove the case); *Virgil v. City of New York*, No. 17CV5100PKCSMG, 2019 WL 4736982, at *7 (E.D.N.Y. Sept. 27, 2019) (holding termination on the ground that the prosecution is unable to prove its case beyond a reasonable doubt is still sufficient to show favorable termination post-*Lanning*). *See also Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 200-01 (2d Cir. 2014) (holding that a plaintiff demonstrated favorable termination where a prosecutor declined to pursue charges because the case could not be proven beyond a reasonable doubt). The Complaint further alleges (and the prosecution concedes) significant weaknesses in the case including the testimony of newly discovered witnesses which tended to exonerate Hincapie, the lack of physical evidence, the problematic nature of the lineup identification of Hincapie, and Hincapie's alleged coerced confession. These allegations are sufficient to plead favorable termination.

Defendants' urge other grounds for dismissal. First, Defendants argue that the

---

[3] *See* Akina Dec. Exhibit D, Recommendation for Dismissal at 3, Dkt. 102-4 ("There is a significant doubt that a re-trial of these charges would result in a conviction"); *id.* at 5 ("it is unlikely that a new jury can be convinced of guilt beyond a reasonable doubt"). *See also* Akina Dec. Exhibit E, Transcript at dismissal hearing at 2:23-25, Dkt 102-5 ("[W]e believe that it is unlikely at this time that we can convince a jury of Mr. Hincapie's guilt beyond a reasonable doubt").

proceeding was not terminated in Plaintiff's favor because he did not prove actual innocence.[4] That argument is wrong, and Defendants cite no support for that argument. Indeed, that proposition fundamentally conflicts with the axiomatic and elementary principle of the presumption of innocence—once a conviction is erased, the presumption of innocence is restored. *See Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017) (Absent conviction of a crime, one is presumed innocent). The test for a favorable termination does not require that actual innocence be established.

Defendants' second argument fares no better than the first. Defendants urge the Court to conclude that the proceeding did not end favorably for Plaintiff—merely because the prosecutors subjectively believe that Hincapie's allegedly coerced confession was in fact voluntary and truthful[5] and that he did participate in the crime. "The subjective beliefs of the members of the District Attorney's office, however, are of no consequence in determining whether [Hincapie] received a favorable termination." *Jovanovic v. City of New York*, No. 04 CIV. 8437 PAC, 2010 WL 8500283, at *6 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 486 F. App'x 149 (2d Cir. 2012). Particularly where the DA's office elected not to retry the case and expressed its inability to prove the case beyond a reasonable doubt and overcome the presumption of innocence afforded to Plaintiff. Accordingly, the Court concludes that Plaintiff has adequately alleged a favorable termination to state a malicious prosecution claim.

---

[4] Actual innocence is notoriously difficult to prove. Under New York law, actual innocence means factual innocence, not mere legal insufficiency of evidence of guilt. *People v. Hamilton*, 115 A.D.3d 12, 23 (2014). "The standard of proof generally applied is proof of actual innocence by clear and convincing evidence." *Id.*

[5] *See Cameron v. City of New York*, 598 F.3d 50, 65 (2d Cir. 2010) ("[P]rosecutors' opinions as to probable cause and complaining officers' credibility are irrelevant in virtually all cases involving claims of malicious prosecution"). Further, in recommending dismissal, the District Attorney's office noted its "inability to establish that Hincapie's claims of...coercion are recent fabrications." (Akina Dec. Exhibit D, Recommendation for Dismissal at 4.) Indeed, Hincapie maintained from the start that his confession was coerced. *Id.*

## 2. Probable Cause

Next, Defendants maintain that the Court should dismiss Plaintiff's claim because he offers "nothing more than his own version of events," which do not rebut the presumption of probable cause.

"The existence of probable cause is a complete defense to a claim of malicious prosecution." *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010). While a grand jury indictment creates a presumption of probable cause, it is rebuttable "by evidence that the indictment was the product of fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (quoting *Colon v. City of New York*, 455 N.E.2d 1248 (1983)). Where there is some suggestion in police records that, as to a fact crucial to probable cause, the arresting officers may have "lied in order to secure an indictment," and "a jury could reasonably find that the indictment was secured through bad faith or perjury," the presumption of probable cause created by the indictment may be overcome. *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003). "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.' " *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)).

Defendants improperly rely on *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003), a case decided on summary judgment to argue that Plaintiff has not met his burden at the motion to dismiss stage to rebut the presumption of probable case. The relevant burden is not the same.[6] Here, Hincapie alleges the indictment was the product of suppressed evidence by the

---

[6] In *Savino*, the Second Circuit held that "[i]n order to survive a summary judgment motion" the plaintiff had to submit evidence more than "conjecture" and "surmise" sufficient for a reasonable jury to find that his indictment

police, fabricated confessions, and conduct taken in bad faith. Specifically, Hincapie alleges

Detectives Christie, Gonzalez, Casey, and Ali forced Hincapie to falsely confess, Detective

Christie wrote out the false statement, and that Detective Casey offered false testimony to the

grand jury. The Complaint alleges that Hincapie is seen during the recorded statement after the

interrogation in a trance-like state, with patches of hair missing from the earlier violent

interrogation, unable to articulate the false statement prepared for him. The Complaint further

alleges Defendants Swenson and Connolly prepared a police report attributing to Lopez false

statements about Hincapie's presence during the crime, and that Defendants Rizzo, Santoro, and

Christie caused Fernandez to revise his statement to add Hincapie's name to the list of those

present during the crime. Accepting these factual allegations as true and drawing reasonable

inferences in Plaintiffs' favor, the Complaint adequately pleads that the indictment was

undoubtedly the product of fraud and bad faith conduct. *See Doe*, 831 F.3d at 48 (explaining that

"the facts a plaintiff alleges in the complaint may turn out to be self-serving and untrue," but a

court at the motion to dismiss stage is "not engaged in an effort to determine the true

facts."). Thus, Plaintiff sufficiently rebuts any presumption of probable cause for the purposes of

the current motion.

Accordingly, the Court concludes that Plaintiff has adequately alleged a federal and state

malicious prosecution claim under federal and state law. [7]

---

was procured in bad faith. 331 F.3d at 73. That holding is consistent with the well-established summary judgment standard, not a motion to dismiss.

[7] The Complaint states a malicious prosecution claim under New York law. As discussed above, New York malicious prosecution requires pleading: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis*, 919 F.3d at 163. The favorable termination prong under New York law requires establishing only a "final termination of the criminal proceeding [that] is not

## C. Denial of Fair Trial Claim (Claim 2)

Plaintiff pleads two theories for his denial of fair trial claim: Defendants (1) fabricated inculpatory evidence by coercing false statements from Pasqual Carpenter, Ricardo Nova, and Emiliano Fernandez, and (2) committed *Brady* violations by suppressing exculpatory statements of Ricardo Lopez and Tannisha Vasquez. In briefing the instant motions, the parties refer to these alleged violations as "*Brady* violations." Defendants argue that Plaintiff's *Brady* claim is subsumed by his fair trial claim based on fabricated evidence and is not sufficiently pled.

In a § 1983 action, a fair trial claim lies where a police officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Ricciuti*, 124 F.3d at 130. The Second Circuit has held that a person has "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000). In doing so, the Second Circuit has permitted "claims for both malicious prosecution and a denial of his fair right to trial based on the same alleged fabrication of evidence." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276 (S.D.N.Y. 2010) (citing *Ricciuti*, 124 F.3d at 130–31). Moreover, "a police officer's actions in suppressing exculpatory evidence ... may be relevant to a fair trial claim." *McCaffrey v. City of New York*, No. 11–CV–1636 (RJS), 2013 WL 494025, at *4 (S.D.N.Y. Feb. 7, 2013).

### 1. Fabrication of evidence

Plaintiff alleges a denial of a fair trial claim based on Defendants' alleged fabrication of

---

inconsistent with the Plaintiff's innocence." *Lanning*, 908 F.3d at 25 (emphasis removed). Because the federal claims survive, the Court exercises supplemental jurisdiction over the state claims.

evidence.[8] To state a fair trial claim based on fabricated evidence, a plaintiff must allege that "an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016). A fair trial claim based on fabricated evidence can be sustained even if the officer had probable cause to arrest in the first place. *Id.* at 277-78.

Defendant argues that this claim fails because *McDonough* imposed favorable termination as an element of a fair trial claim based on fabricated evidence. But the Court has already determined that Hincapie has adequately alleged a favorable termination (*see supra*); and it need not decide the issue again. Plaintiff adequately states a claim for denial of a fair trial based on fabricated evidence.

### 2. *Brady* Claim

Similarly, a fair trial claim can arise when police or prosecutors withhold material exculpatory or impeaching evidence from a defendant. *See Brady v. Maryland,* 373 U.S. 83, 87 (1963); *accord Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016). To prevail on a *Brady* claim, a plaintiff must demonstrate that: (1) the evidence at issue is " 'favorable to the accused, either because it is exculpatory or because it is impeaching' "; (2) the evidence was " 'suppressed by the State' "; and (3) " 'prejudice ... ensued.' " *See Leka v. Portuondo,* 257 F.3d 89, 98 (2d Cir. 2001) (quoting *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999)). Because a *Brady* violation requires that prejudice ensue, "[e]vidence is not 'suppressed' if the defendant either knew or should have known of the essential facts permitting him to take advantage of any

---

[8] The claim of denial of the right to a fair trial due to fabricated evidence stems from the Sixth Amendment and the Due Process clauses of the Fifth, Sixth, Fourteenth Amendments of the U.S. Constitution. *See Holbrook v. Flynn*, 475 U.S. 560 (1986). Fabrication of evidence constitutes a violation of this right to a fair trial.

exculpatory evidence." *United States v. Leroy,* 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted). The question in addressing a *Brady* claim is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434 (1995). Additionally, where, as here, the defendants are police officers, "the scope of possible liability is necessarily more limited because police officers satisfy their obligation under *Brady* when they turn over exculpatory information to prosecutors, unless there is some indication that the police have suppressed evidence." *McCaffrey,* 2013 WL 494025, at *12.

Plaintiff has sufficiently pled his *Brady* claim as to the Lopez statements against Swenson and Connelly. (*See* Compl. ¶¶ 80-82; 150-51; 197.)[9] The Complaint plausibly alleges that Detective Swenson suppressed exculpatory statements concerning, *inter alia,* Plaintiff's presence during the crime that were made by Lopez during his interrogation by not recording them in the police report. (Compl. ¶¶ 78-82;150-51;197.) *See Ying Li v. City of New York,* 246 F. Supp. 3d 578, 626 (E.D.N.Y. 2017) (allowing *Brady* claim and fabrication of evidence claim based on same alleged conduct to proceed at motion to dismiss stage).

Accordingly, Plaintiff adequately pleads a fair trial claim.

### D. 1983 Coercion Claim (Claim 3)

Defendant argues that the Court should dismiss Plaintiff's coercion claim because it is duplicative of his denial to a right to fair trial claim.[10]

---

[9] The claim as to the Vasquez statements is not sufficiently pled. (*See* Compl. ¶ 197.) The one reference to Vasquez in the Complaint does not identify the nature of the allegedly favorable statement and the Complaint does not incorporate Montero's Recommendation of Dismissal. (*Id.*)

[10] Plaintiff's coercion claim is brought against only Defendants Casey, Gonzalez, Ali, and Christie. Plaintiff's coercion claim is based on Defendants' deliberate lies and threatening and inflicting bodily harm on plaintiff himself

A plaintiff may bring a § 1983 coercion claim "if coercion was applied to obtain a waiver of the plaintiff's rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiff in a criminal proceeding." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Courts "look at the totality of circumstances surrounding a *Miranda* waiver and any subsequent statements to determine knowledge and voluntariness." *Thomsen v. City of New York*, No. 15CV2668 (DLC), 2016 WL 590235, at *9 (S.D.N.Y. Feb. 11, 2016) (citing *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014)). "A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given." *Id.* (citation omitted). Determining the voluntariness of a confession is a fact-intensive inquiry that requires considering "the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *Id.* at 24 (citation omitted).

Plaintiff states a plausible claim that his right to be free from compulsory self-incrimination was violated. Plaintiff's claim that his will was overcome by Defendants' threats and violence is plausible. Further, the State used Plaintiff's confession during the trial. Accordingly, the Court denies Defendants' motion to dismiss claim three.

### E. 1983 Supervisory Liability (Claim 4)

Because § 1983 claims require the personal involvement of each defendant, a supervisor may be liable only if "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal,

---

to procure a confession and failure to provide *Miranda* warnings. (*See e.g.*, Compl. ¶ 202.) His denial of his right to a fair trial claim is based upon (1) tactics used to procure fabricated statements from others Pasqual Carpenter, Ricardo Nova, and Emiliano Fernandez; and (2) suppression of exculpatory statements by Ricardo Lopez. (*See id.* ¶ 197.) Thus, the claims are not premised on the exact same alleged conduct.

failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Plaintiff alleges supervisors Ali, Borman, and Connolly participated directly in the alleged constitutional violation, which is sufficient at this stage. (Compl. ¶ 206.) The claims against the remaining supervisors[11] are dismissed for the reasons stated. *See supra.*

### F. *Monell* Claim (Claim 5)

A municipality may be held liable under § 1983 for a policy or custom that caused the deprivation of plaintiff's constitutional right. *Newton v. City of New York*, 779 F.3d 140, 152 (2d Cir. 2015). To satisfy a motion to dismiss, the "plaintiff need not identify an express rule or regulation, but can show that a ... practice of municipal officials was so persistent or widespread as to constitute a custom or usage." *See e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiff fails to state a *Monell* claim. Plaintiff has not pled facts demonstrating a direct link between his injuries and the alleged municipal policy of the NYPD of not recording interrogations. While the policy of recording interrogations is a prudent practice it was not required by the law at the time and the alleged coercive behavior may still have occurred. Plaintiff's municipal liability claims against the City are dismissed.

---

[11] These supervisors are Bayshim, Herbst, Demartino, and Mole.

## G. False Arrest / Imprisonment Under Federal and State Law (Claim 6)

Defendants contend Plaintiff's false arrest claim is time-barred. Plaintiff concedes this and urges the Court to apply equitable tolling to Hincapie's false arrest and false imprisonment claims.[12] (Opp'n at 23, Dkt. 107.)

The statute of limitations for Section 1983 claims filed in federal court in New York is determined by New York State's statute of limitations for personal injury actions. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citing *Owens v. Okure*, 488 U.S. 235, 251 (1989)). In New York, the applicable statute of limitations is three years. N.Y. C.P.L.R. § 214 (McKinney). Thus, Plaintiff should have filed his false arrest claim within three years of the date on which the cause of action accrued.

While the applicable limitations period is determined by state law, the accrual date "is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." (emphasis in the original)). Under federal law, a § 1983 false arrest claim accrues at the time the alleged false arrest ends (i.e., when the arrestee becomes held pursuant to legal process). *Id.* at 389. By contrast, the accrual date of a state common law claim is determined by state law, and under New York law, a "cause of action for the tort of false imprisonment accrues" not on the date of arraignment but on "the date of the prisoner's release from confinement." *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675–76 (2d Cir. 2009) (citing *Jackson v. Police Dep't of the City of N.Y.*, 500 N.Y.S.2d 553 (N.Y. App. Div., 2d Dep't, 1986)). Under New York

---

[12] Plaintiff also alleges a false imprisonment claim under Section 1983. However, the Court does not address this claim separately, because pursuant to New York law, false arrest and false imprisonment are "synonymous." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991).

law, "[c]auses of action based on false arrest and false imprisonment accrue upon the subject's release from confinement and are governed by a one-year statute of limitations." *Bellissimo v. Mitchell*, 995 N.Y.S.2d 603, 605 (N.Y. App. Div. 2d Dep't 2014) (internal citations omitted); N.Y. C.P.L.R. § 215(3).

Plaintiff's false arrest claims are time-barred. Plaintiff was arrested and charged on September 3, 1990. His conviction was dismissed on January 25, 2017. Thus, his claims are dismissed as time-barred under both federal and state law. Plaintiff has not shown that equitable tolling should apply. Thus, the Court grants Defendants' motion to dismiss the false arrest claims.

### H. IIED & NIED (Claim 7)

Defendants argue that Plaintiff's common law IIED and NIED claims are time-barred because Plaintiff did not comply with New York General Municipal Law § 50-e, which requires that plaintiffs bringing tort actions against a municipality or its officers serve a notice of the claims on the defendants within ninety days of the date that the claims accrue. N.Y. Gen. Mun. Law § 50-e. Defendants further argue that the claims are time-barred because Plaintiff did not comply with New York General Municipal Law § 50-i, which requires that plaintiffs bringing tort actions against a municipality or its officers commence claims within one year ninety days of the date after the happening of the event upon which the claim is based. N.Y. Gen. Mun. Law § 50-i. Plaintiff argues that he provided such notice within the 90-day time limit and initiated this action within the requisite time period. (Opp'n at 8, 19.) He further argues that the emotional distress arose from the wrongful confinement and the prosecution itself, which continued until January 25, 2017.

The continuing tort doctrine applies to claims of IIED under New York State law. *Breton*

*v. City of New York*, No. 17-CV-9247 (JGK), 2019 WL 4194336, at *5 (S.D.N.Y. Sept. 3, 2019); *Barone v. United States*, No. 12cv4103, 2016 WL 2658174 (LAK), at *2 (S.D.N.Y. May 5, 2016). Therefore, "claims for IIED that allege a continuing pattern and practice of actionable behavior may invoke the continuing tort doctrine to provide an exemption from the statute of limitations where the last actionable act of the alleged course of conduct falls within the statute of limitations." *Barone*, 2016 WL 2658174, at *2 (quotation marks omitted). Plaintiff alleges a continuing tort that did not end until the District Attorney dismissed the charges against Plaintiff. Thus, the claims accrued on the date the action terminated in his favor, which was January 25, 2017. *See Breton*, 2019 WL 4194336, at *4. Plaintiff filed notice of his claim on March 27, 2017, which is within the 90-day limit and Plaintiff filed this action on April 19, 2018 (one year, two months and 25 days later). Thus, the Court denies Defendants' motion to dismiss the IIED and NIED claims as untimely.

## I. Failure to Intervene (Claim 8)

"Law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). To state a claim for failure to intervene, a complaint must plead that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd,* 461 F. App'x 18 (2d Cir. 2012) (summary order); *accord Corso v. City of New York*, No. 17 Civ. 6096, 2018 WL 4538899, at *11 (S.D.N.Y. Sept. 20, 2018).

Although the Complaint alleges that the same defendants who committed the violations

also failed to intervene, these theories may be pleaded in the alternative. *See, e.g., Guerrero v. City of New York,* No. 16 Civ. 516, 2017 WL 2271467, at *4 (S.D.N.Y. May 23, 2017) (collecting cases). The Complaint specifically alleges that all defendants, except Bayshim, Herbst, Demartino, and Mole, interviewed Plaintiff or the key witnesses, testified in proceedings or prepared reports inculpating Hincapie. It is therefore plausible that they all knew and had the opportunity to intervene upon observing any unconstitutional conduct. Accordingly, the Court denies Defendants' motion to dismiss the failure to intervene claim.

## CONCLUSION

Defendants' motion to dismiss the Complaint for failure to state a claim is GRANTED in part and DENIED in part. The motion is GRANTED as to Defendants Bayshim, Herbst, Demartino, and Mole. The Court GRANTS the motion to dismiss the *Monell* claim against the City (Claim 5) and the false arrest claims (Claim 6). Defendants' motion to dismiss the remaining claims is DENIED as to all other Defendants.

The Clerk of the Court is directed to close the motions at Dkts. 101, 114, 125, 133.

Dated: New York, New York
        January 21, 2020

SO ORDERED

PAUL A. CROTTY
United States District Judge